485 A.2d 15

**COMMONWEALTH of Pennsylvania,**

v.

**John J. McSORLEY, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1984.

Filed Nov. 9, 1984.

Petition for Allowance of Appeal Granted March 26, 1985.

Barbara Geisz Demarest, Plymouth, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CAVANAUGH, McEWEN and CIRILLO, JJ.

OPINION ANNOUNCING THE JUDGMENT OF THE COURT:[1]

This is an appeal from the lower court's denial of a motion to dismiss the charges on grounds of double jeopardy. A pre-trial order denying a motion to dismiss on grounds of double jeopardy is a final, appealable order. *Commonwealth v. Buechele*, 298 Pa.Super. 418, 444 A.2d 1246 (1982).

This case presents a difficult question that arises out of an unusual fact pattern. Appellant, John J. McSorley, Jr., was arrested on November 14, 1981 and charged with operating a motor vehicle while under the influence of alcohol.[2] After arraignment on December 14, 1981 McSorley received a letter dated January 18, 1982 from Dr. Vincent F. Miraglia.[3] Dr. Miraglia was the Director of the Main Line Council on Alcoholism. The Council operated a safe driver clinic for Montgomery County. The letter di-

---

1. The opinion is entitled "Opinion Announcing the Judgment of the Court" because while a majority of the panel agrees with the judgment, a majority does not join in the opinion.

2. § 3731 of Pennsylvania Motor Vehicle Code. Appellant was also charged with violating § 3310(a) of the Code—following too closely.

3. Relevant parts of the letter provided:

> Dear Mr. McSorley:
> You are directed by the Montgomery County District Attorney's Office to attend the Safe Driving Clinic.
> You are to report to the Montgomery County Court House on the following dates and time for classes and interview.
> Monday, February 1, 1982 at 7:30 p.m. Interview/Class at 8:00 p.m.
> Monday, February 8, 1982 at 8:00 p.m.
> Monday, February 15, 1982 at 8:00 p.m.
> Monday, February 22, 1982 at 8:00 p.m.
>
> You are required to pay a fee of $50.00 for the interview and four classes; make check or money order payable to the Main Line Council on Alcoholism.

rected appellant that he was required to attend the driving school. The appellant testified that he interpreted this letter as directing him to report for the Montgomery County Accelerated Rehabilitative Disposition Program (hereinafter, "ARD"). In addition to the wording, see infra note 2, the letter came under the letterhead of the District Attorney's ARD/DUI (driving under influence) Division. The letter also stated that McSorley was required to pay a Fifty Dollar ($50.00) fee for the program.

Appellant then received a letter dated January 25, 1982 from Joseph M. Iacovitti, Chief of the ARD Division of the Montgomery County District Attorney's Office. This letter gave appellant a general description of the ARD alternative. The letter instructed McSorley to complete an enclosed questionnaire to determine his eligibility and to return it within ten (10) days in order to be considered for the program. It is not clear from the record exactly when appellant received this letter. However, appellant completed the questionnaire and hand delivered it on February 1, 1982—the same evening he appeared for his first session of the safe driving clinic.

Thereafter, appellant attended the remainder of the classes of the safe driving clinic. On February 22, 1982, after the last session, McSorley received a certificate signed by Dr. Miraglia stating that he had successfully completed the requirements of the clinic. Appellant next received a letter dated February 25, 1982 from Mr. Iacovitti. This correspondence stated that McSorley was *ineligible* for ARD because of two prior arrests in Philadelphia County. The case was then scheduled for trial.

The record demonstrates that appellant attended the safe driving clinic believing he was in ARD. He felt that successful completion of the clinic would result in dismissal of the charges against him. Before each of appellant's four sessions at the county courthouse he jotted down "ARD" on the visitors' log under "Nature of Business." McSorley was acting under his own understanding of the situation since he did not consult a lawyer during any aspect of the

proceedings until after receiving the February 25 letter rejecting him for the program.

At appellant's hearing on this motion to dismiss, Mr. Iacovitti's testimony demonstrated that the district attorney's office never intended to recommend McSorley for ARD. Nevertheless, the January 18 letter directing McSorley to appear at the classes was sent only after Dr. Miraglia received notification from the district attorney's office that McSorley had been accepted into the program. This was the usual administrative method of informing the clinic about ARD participants. There was no indication why this notice was sent from the district attorney's office. Therefore, we assume it was an administrative error.

Appellant contends that his payment of a fifty dollar ($50.00) fee and attendance at the safe driving program was a restriction on his freedom and deprivation of his liberty. Accordingly, appellant maintains that the deprivation amounts to an order of sentence for double jeopardy purposes. Therefore, dismissal of the case would be necessary to protect appellant from multiple punishment.

The Commonwealth maintains that appellant's attendance at the safe driving program was a voluntary act on his part. The Commonwealth did not "direct" appellant to enter the safe driving clinic because the Commonwealth is without power to direct any defendant to enter the ARD program. Therefore, appellant was never subjected to punishment flowing from a conviction and jeopardy did not attach.

■ The prohibition against double jeopardy protects a defendant from multiple punishments for successive prosecutions for the same offense. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). In a non-jury trial, jeopardy attaches when the court has begun to hear evidence. *Commonwealth v. Klobuchir,* 486 Pa. 241, 405 A.2d 881 (1979); *Serfass v. United States,* 420 U.S.

377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) (with the swearing of the first witness).

After extensive research, it appears that double jeopardy provisions have yet to be applied to Pennsylvania's diversion program. Indeed, our search has not revealed any case where a criminal defendant was prosecuted after successfully completing ARD.

When a criminal defendant agrees to diversion the proceedings are deferred with the state reserving the right to prosecute if the defendant violates any of the conditions of the program. Pa.R.Crim.P. 184. Where the defendant successfully meets the conditions of the program, the charges against the defendant will be dismissed and he is usually entitled to have his arrest record expunged. Pa.R. Crim.P. 185; *Commonwealth v. Armstrong*, 495 Pa. 506, 434 A.2d 1205 (1981).

█ Nevertheless, the caselaw does not give a clear picture of how ARD effects the status of a criminal defendant. In *Commonwealth v. McDevitt*, 57 Pa.Commw.Ct. 589, 427 A.2d 280 (1981), the court held that by accepting ARD a defendant knowingly waives his right to prove his innocence or risk conviction by entering a plea. The court also held that admission into ARD is an offense for purposes of classifying the defendant an habitual offender even though formal convictions cannot be obtained under the program. *Id.* at 591, 427 A.2d at 282. On the other hand, the fact of a witness' admission into ARD is not a "conviction" for impeachment purposes. *Commonwealth v. Krall*, 290 Pa. Super. 1, 434 A.2d 99 (1981). In *Commonwealth v. Knepp*, 307 Pa.Super. 535, 453 A.2d 1016 (1982), this Court went as far to say that admission into ARD is not equivalent to a conviction "under any circumstances" since charges are deferred.[4] Additionally, a lower court has held that successful *completion* of ARD is not equivalent to a finding of

---

**4.** Interestingly, the *Knepp* court did cite *McDevitt, supra,* as holding that ARD was a "conviction" for habitual offender purposes. *Knepp, supra,* 307 Pa.Superior Ct. at 541, 453 A.2d at 1018.

innocence. *Commonwealth v. McKellin,* 9 D. & C.3d 572 (1979).

Against this background, the lower court ruled that McSorley had not been put in prior jeopardy and had not suffered any punishment from ARD or any other criminal penalty. Also, the court held that there was not any valid evidence that McSorley had been accepted into the ARD program.

At first glance, it would appear that appellant's double jeopardy claim should fail because jeopardy had not yet attached. However, we find the law of our sister state of Ohio[5] to be most helpful. In *State v. Urvan,* 446 N.E.2d 1161, 4 Ohio App.3d 151 (1982), the court was faced with a similar double jeopardy claim. In that case, the defendant was charged in Medina County, Ohio under an allied offense statute[6] with receiving stolen property. The defendant was recommended for and successfully completed the diversion program in Medina County. As a result, the receiving charge was dismissed. One week later, the defendant was indicted in Cuyahoga County for grand theft relating to the same events as the Medina County charge.[7] The defendant filed a motion to dismiss the Cuyahoga charge on grounds of double jeopardy.

The court pointed out that

Any view of diversion processes not at war with their purposes must include a conception of them (when successfully completed) as the equivalent of served or probated time with the consequent expiation of the crime.... Moreover, if the program is to make logical sense and traffic at all in fair treatment, the state's election to pursue the crime of stolen property forecloses its right to undertake pursuit of the grand theft charge through a

5. Ohio's diversion program, R.C. 2935.36, is virtually identical to Pennsylvania's. Pa.R.Crim.P. 175, *et seq.*

6. R.C. 2941.25. The statute refers to allied offenses of "similar import." An accused may be tried for both, but may be convicted and sentenced for only one. The prosecutor has the choice of which offense to pursue. *Urvan, supra,* 446 N.E.2d at 1166.

7. Either county could have had venue over the entire sequence, but Medina County acted first.

second agent (Cuyahoga County). Jeopardy must attach as a result of the activity of the first (Medina County)." *Id.* 446 N.E.2d at 1166, 1167.

The court interpreted the diversion process in terms of a contractual relationship between the state and the defendant. *Id.* at 1167. Just as in this Commonwealth, to participate in a diversion program a defendant must waive any statute of limitations and any constitutional or statutory speedy trial rights. Pa.R.Crim.P. 178. The defendant agrees to whatever conditions the state establishes with the expectation that the charges will be dismissed when he meets those conditions.

As the *Urvan* court points out "if pre-trial diversion programs are to be effective, the state must live up to its obligations." *Id* at 1167. True, diversion programs give district attorney discretion over which cases are proposed for ARD. *Commonwealth v. Boerner*, 268 Pa.Super. 168, 407 A.2d 883 (1979). However, the decision to divert a defendant "comes after the prosecutor has fully discharged all discretionary functions and after the prosecutorial die has been cast." *Dearborne v. State*, 575 S.W.2d 259, 263 (Tenn.1980). In placing a defendant into a diversion program, the state covenants to dismiss the charges once the defendant satisfies the conditions of the program. Unless the defendant violates one of those conditions, the state cannot prosecute him. Just as the terms of a plea bargaining arrangement are binding on the state, *Commonwealth v. Landi*, 280 Pa.Super. 134, 421 A.2d 442 (1980), so must the terms of a diversion agreement bind the state. To hold otherwise, would create a disincentive for defendants to enter diversion programs. "For the state to be allowed to ... bring a second prosecution ... after all the terms of the diversion contract have been met, violates the spirit and the letter of constitutional double jeopardy policy and the spirit of the legislative policy in the state." *Urvan, id.,* 446 N.E.2d at 1168.

■ In applying these principles to the case at hand, we first must determine whether appellant was participating in the ARD program. It is clear that the procedures outlined in Pa.R.Crim.P. 175, *et seq.*, were not followed. Nevertheless, appellant was justified in relying on the January 18 letter.[8] A reasonable person faced with the same circumstances would not have acted differently. Dr. Miraglia's letter was sent pursuant to authorization by the Montgomery County District Attorney's Office. As the *Urvan* court noted, the state cannot avoid its obligations by pretending that it acts disparately. *Urvan, id,* at 1167. What the State of Ohio "knew and did in Medina County ... it knew in legal contemplation in Cuyahoga County and was bound in both places by applicable federal and state constitutional principles. Whether the state acts by design *or inadvertence* makes no difference." (Footnote omitted.) (Emphasis added.) *Id.* at 1167. We find this reasoning applicable in this case where the "inadvertence" occurred within the District Attorney's Office of Montgomery County. What the district attorney's office knew and did with its right hand (sending the notification that appellant could reasonably have interpreted as evidencing his acceptance into ARD), it cannot take away with its left hand (by claiming that appellant was ineligible). A reasonable reading of both the January 18 and January 25 letters might well have indicated to appellant that a successful completion of the program would result in a dismissal of the charges against him. Appellant detrimentally relied on this reasonable interpretation. Under the circumstances, we hold that appellant was implicitly accepted into ARD.

Although the Commonwealth is restrained from prosecuting appellant at this time, we cannot dismiss the proceedings against the appellant. Appellant has completed the safe driving clinic which is ordinarily only one phase of an ARD agreement that would be given to a defendant under

8. Of course, if appellant had shown the letter to an attorney familiar with ARD procedures this confusion would have been avoided. However, defendants should not be forced to retain counsel for minor offenses just so as they can understand the county bureaucracy. Instead, counties should structure their procedures and correspondence so that lay people will not be disadvantaged.

similar charges. Therefore, we enter an order staying the proceedings against appellant and remanding with directions to divert appellant into ARD and impose whatever remaining conditions as would be imposed on a defendant under similar circumstances. Jurisdiction relinquished.

CIRILLO, J. files concurring opinion.

McEWEN, J. files dissenting opinion.

CIRILLO, Judge, concurring:

■ I am troubled by the majority's seemingly casual reliance on the double jeopardy clause as grounds for reversal. While the double jeopardy clause may be invoked in various contexts, its principal design is to protect criminal defendants from multiple trials and multiple punishments for the same offense. *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976). Where there is no threat of either successive prosecutions or multiple punishments, the double jeopardy clause is not offended. *Commonwealth v. Yost*, 305 Pa.Super. 316, 451 A.2d 549 (1982); *Commonwealth v. Beckman*, 304 Pa.Super. 239, 450 A.2d 660 (1982); *United States v. Hecht*, 638 F.2d 651 (3rd Cir.Pa.1981). In my view this case does not engender double jeopardy concerns.

A criminal defendant has a "constitutional interest in finality, a cognizable interest in seeing that criminal proceedings against him are resolved once and for all." Westen and Drubel, "Toward a General Theory of Double Jeopardy," 1978 Sup.Ct.Rev. 81. Here however, appellant has no right to expect that his problems with the Commonwealth have been resolved. His constitutional interest in finality has not yet vested.

■ Certainly, a criminal defendant, once convicted, may rest confident that he will not be retried for the same offense. A participant in an ARD program, however, is not

entitled to the same confidence. Admission to an ARD program is not equivalent to a conviction under any circumstances. *Commonwealth v. Knepp,* 307 Pa.Super. 535, 453 A.2d 1016 (1982). Rather, participation in a diversion program results in a deferral of criminal charges until completion of the program. Pa.R.Crim.P. 181. In the event that the program is successfully completed, the charges are dismissed and no conviction ever results. *Commonwealth v. Knepp, supra.* Only when the program is completed may an ARD participant feel secure in final disposition of charges, not before. Only then may he shield himself with the protection of the double jeopardy clause.

In this case, appellant has completed only one phase of his diversion program. The Commonwealth removed appellant from ARD while appellant had remaining conditions of diversion yet to complete. While I think appellant should be given the opportunity to complete ARD, it is not by reason of double jeopardy.

 Rather, I view the concept of contract as the compelling analogy. Dr. Miraglia's letter written under District Attorney letterhead, which directs appellant to attend safe driving school, extends appellant an offer of the ARD alternative. When appellant accepted that offer by enrolling in the safe driving clinic, an agreement or arrangement was entered into. As the majority notes:

> In placing a defendant into a diversion program, the state covenants to dismiss the charges once the defendant satisfies the conditions of the program. Unless the defendant violates one of those conditions, the state cannot prosecute him. Just as the terms of a plea bargain arrangement are binding on the state, *Commonwealth v. Landi,* 280 Pa.Super. 134, 421 A.2d 442 (1980), so must the terms of a diversion agreement bind the state. (Majority op. at p. 19).

By removing appellant from diversion, for reasons other than a failure to comply with conditions of diversion, the Commonwealth has breached its agreement.

Accordingly, I concur in the result reached by the majority, appellant should be allowed to complete ARD. This disposition is proper, not because the Commonwealth's removal of appellant from ARD is a double prosecution or double punishment, but rather, it is plainly a breach of agreement.

McEWEN, Judge, dissenting:

Since, unlike my colleagues, I do not perceive such reflections of equity or of contract law or of protection against double jeopardy that would serve to bar prosecution of appellant by the Commonwealth, I most respectfully dissent.

Appellant was arrested on November 18, 1981, at the scene of a motor vehicle accident after he failed a field sobriety test and registered 0.22% on a breathlyzer. As a result, he was charged with violation of Section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731, Driving Under the Influence of Alcohol. Soon after his preliminary hearing in January, 1982, appellant received the following letter:

MONTGOMERY COUNTY
Icohol - Highway Safety Program
Office of District Attorney
ARD/DUI

MAIN LIN COUNCIL ON ALCOHOLISP
Safe riving Clinic
152 Cambridge Road
King of Prussia, Pa. 19408
(215) 265-3849

Non Profit

January 18, 1982

John McSorley
542 Gibson Ave.
Rockledge, Pa. 19111

Dear Mr. McSorley:

You are directed by the Montgomery County District Attorney's Office to attend the Safe Driving Clinic.

You are to report to the Montgomery County Court House on the following dates and time for classes and interview.

Monday, February 1, 1982, at 7:30p.m. Interview/Class at 8:00 p.m.

Monday, February 8, 1982 at 8:00 p.m.

Monday, February 15, 1982 at 8:00 p.m.

Monday, February 22, 1982 at 8:00 p.m.

The Montgomery County Court House is located at Airy and Swede Streets, Norristown, Pa. Interviews and classes will be conducted in the Jury Marshalling Room located in the basement of the court house.

You are required to pay a fee of $50.00 for the interview and four classes; make check or money order payable to the Main Line Council On Alcoholism.

If you have any questions please call (215) 265 3849 between 9:00 a.m. and 5:00 p.m.

Very truly yours,

Dr. Vincent F. Miraglia

VFM/ss

| | | |
|---|---|---|
| Safe Driving Clinic | Directors | John J. Hartnett |
| John J. Miraglia | Genevieve Burton, Ed. D. | Paul O. Klingensmith, M.I |
| Vincent F. Miraglia | Patrick C. Campbell, Esq. | Mrs. Bernice Mauch |
| Joseph Silvestrini | The Hon. R. Lawrence Coughlin, Jr. | John Miraglia |
| | Katharine B. Cuthbert, M.D. | Vincent Miraglia |
| | Mrs. W. Gibbs Fan | |

Appellant a few days thereafter received the following further letter concerning the offense with which he was charged:

OFFICE OF THE DISTRICT ATTORNEY

JOSEPH SMYTH, JR.
DISTRICT ATTORNEY

PAUL W. TRESSLER
FIRST ASSISTANT
DISTRICT ATTORNEY

BERNARD J. McNULTY, JR.
EXECUTIVE ASSISTANT
DISTRICT ATTORNEY

COUNTY OF MONTGOMERY
COURT HOUSE
NORRISTOWN, PENNSYLVANIA
19404

CLEMENT S. SEROSKI ALFRED F. ZOLLERS
CHIEF COUNTY DETECTIVE CHIEF CLERK

DISTRICT ATTORNEY'S OFFICE (215) 278 3090
COUNTY DETECTIVE BUREAU (215) 278 3200
(215) 278-3109

January 25, 1982

John McSorley, Jr.
542 Gibson Avenue
Rockledge, Pennsylvania 19111

RE: COMMONWEALTH vs. JOHN MCSORLEY
NO: 3721-81

Dear MR. McSorley:

As you know, there is a pending criminal case against you above referenced. Upon review of the charges against you, it appears that you may be eligible for placement in the Accelerated Rehabilitative Disposition Program (ARD) pursuant to the Rules of Criminal Procedure.

You have the right to a trial and the Commonwealth must prove your guilt beyond a reasonable doubt, however, because of the nature of this case, you may wish to be considered for placement in the ARD Program. Under the terms of this Program, instead of having a trial, a person charged with a crime may be placed under probation under certain conditions to which he agrees, recommended by the District Attorney and imposed by the Court. If the Program is successfully completed, the

charges will be dismissed. If the person violates the conditions of probation, his case is listed for trial as if he had never been included in this Program.

This Program offers you an excellent opportunity, if you comply with its terms. In the event you want to be considered for it, you must complete the enclosed Questionaire to determine eligibility for Accelerated Rehabilitative Disposition and return it to this office within ten (10) days. The matter will then be carefully reviewed and a final determination made, of which you will be notified.

If you have any questions about this Program, you should consult your attorney. IF WE DO NOT RECEIVE THE SIGNED AND NOTARIZED APPLICATION WITHIN TEN (10) DAYS, WE WILL ASSUME THAT YOU DO NOT WISH TO APPLY FOR THIS PROGRAM. AT THIS POINT, THE CASE WILL THEN BE LISTED FOR TRIAL AND YOU MAY NO LONGER BE ELIGIBLE FOR THIS PROGRAM.

Sincerely,

JOSEPH M. IACOVITTI
Chief, ARD Division

JMI:mfl

Appellant completed the questionnaire enclosed with this letter of January 25 and returned it personally to the Office of the District Attorney on February 1, 1982, just hours prior to attending the first of the four safe driving classes he would eventually attend.

Appellant was thereafter notified by letter on February 25, 1982, that his application for the ARD program had been denied due to two prior convictions in Philadelphia. Appellant entered a not guilty plea on March 2, 1982, and then retained counsel for institution of the proceedings at issue.

The lead opinion finds that principles of double jeopardy preclude prosecution. Jeopardy had, however, in my view, never attached. The concurring opinion finds that principles of contract law and fairness preclude prosecution but I am unable to agree.

While appellant attended four two and one-half hour driving clinic classes, for which he was charged $50.00, he had been made aware *before* he attended even the first class, by the letter of January 25 from the District Attorney, that he had not been admitted to the ARD program since it was necessary to first complete two procedures, specifically, appellant had to complete an application for inclusion in the program and the District Attorney had to

536

determine whether appellant was eligible for the program. The letter made clear that if appellant filed the application, "[t]he matter will then be carefully reviewed and a final determination made, of which you will be notified."

Twenty-five days after appellant submitted his application, he was notified of his ineligibility for the program. The only hardship occasioned as a result of the confusion by the initial letter of January 18, 1982, was appellant's attendance at four safe driving classes and the payment of a $50.00 fee. While under certain circumstances principles of fairness might operate to preclude prosecution, the facts of the instant case do not compel such a conclusion. I, therefore, dissent.