673 A.2d 975

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Antoine BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 29, 1996.

Filed March 29, 1996.

Norris E. Gelman, Philadelphia, for appellant.

Kathy L. Echternach, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND and TAMILIA, JJ. and MONTEMURO, J.*

MONTEMURO, Judge:

This appeal comes from appellant Antoine Brown's (Brown) conviction and judgment of sentence for aggravated assault and possession of an instrument of crime. Brown was found guilty by a jury on February 23, 1994, and was sentenced by the Honorable Charles P. Mirarchi, Jr., of the Court of Common Pleas of Philadelphia County on February 8, 1995, to consecutive sentences of ten to twenty years incarceration for aggravated assault and two and one-half to five years incarceration for possession of an instrument of crime. We affirm.

Brown was convicted for stabbing a co-worker, William Rase (Rase), on December 7, 1990. At the time, both men worked at a cemetery. Sometime after 12:30 p.m., as Rase was working alone in a part of the cemetery, Brown assaulted Rase with a blow to the head, and then stabbed him in the throat. Another employee, John Fital, found Rase at approximately 1:25 p.m. As a result of the attack, Rase was in a coma for five months. After emerging from the coma, Rase was unable to speak and was confined to a wheelchair, paralyzed from the waist down. Rase underwent extensive therapy, and eventually was able to communicate "yes" or "no" by using his thumb. Ultimately, in April, 1992, Rase was able to identify Brown as the person who assaulted him.

Brown, represented by new counsel, raises three issues for our review:

1. Did the trial court commit reversible error when it ruled that Brown's prior participation in an ARD program for theft could be used to impeach his credibility as a witness, and so charged the jury?

2. Was trial counsel ineffective for not preserving, through objection, the trial court's error in charging that Brown's prior theft conviction and his prior participation in the ARD program for theft may be used for impeachment?

* Retired Justice assigned to Superior Court.

3. Was trial counsel ineffective for failing to object to blatant misconduct in summation by the prosecutor who literally testified that Walter Tate was an unindicted co-conspirator who had a Fifth Amendment right not to incriminate himself and accordingly could not be called as a witness by the prosecution?

Brown's first claim is that the trial court erred in allowing the Commonwealth to use his prior participation in an Accelerated Rehabilitative Program (ARD) for an arrest for theft to impeach his credibility. Brown claims that because participation in ARD is not a conviction, it may not be used for impeachment purposes.

The determination of the scope and limits of cross-examination are within the discretion of the trial court, and we cannot reverse those findings absent a clear abuse of discretion or an error of law. *Commonwealth v. Nolen,* 535 Pa. 77, 82, 634 A.2d 192, 195 (1993). Evidence of prior convictions may be introduced for the purpose of impeaching the credibility of a witness if

> the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date. If a period of greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.

*Commonwealth v. Randall,* 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987). This rule applies equally to defendants who testify. *See Commonwealth v. Rollins,* 525 Pa. 335, 580 A.2d 744 (1990). Theft is a crime involving dishonesty, and therefore is a prior conviction which may be used to impeach credibility. *Commonwealth v. Ellis,* 379 Pa.Super. 337, 359, 549 A.2d 1323, 1334 (1988), *allocatur denied,* 522 Pa. 601, 562 A.2d 824 (1989).

Before Brown testified at trial, the trial court had already ruled that if Brown were to testify, Brown's theft conviction and ARD participation could be used by the Commonwealth to impeach him. Thus, Brown's trial counsel elicited this infor-

mation on direct. In its charge to the jury, the trial court stated,

In referring to defendant's prior criminal record, I indicated that the defendant had one criminal contact. Actually, there were two. But it's your recollection that counts, not the Court's recollection. But there was brought out by defendant that there were two criminal contacts, both of them for theft. One resulted in a guilty plea. One resulted in ARD, which is the accelerated rehabilitative disposition program, which is a pretrial type disposition, without verdict.

The crime of theft has inherent in it dishonesty and falsehood. So that while the defendant can't be found guilty here because of whatever took place back in 1978 or '79, which is when these matters were committed, nevertheless you may weigh his testimony with respect to the areas of credibility and believability as I've defined for you and as the crimen falsi crimes that were committed affect the believability and credibility of his testimony. I am not telling you to find the defendant guilty because of prior criminal acts. The question is, is his testimony credible and believable or not? And that you will weigh.

(N.T. 2/23/94 at 90–91.) During closing arguments, defense counsel himself referred to the thefts as "two convictions." (N.T. 2/23/94 at 29.)

■ The Commonwealth argues that pursuant to *Commonwealth v. Bowser*, 425 Pa.Super. 24, 624 A.2d 125 (1993), *allocatur denied*, 537 Pa. 638, 644 A.2d 161 (1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 186, 130 L.Ed.2d 120 (1994), evidence of participation in an ARD may be used to impeach the credibility of a witness. In holding that a witness may be cross-examined concerning admission into an ARD program, the court noted that, "While it is clear that admission into an ARD program generally is not equivalent to a conviction, it equally is clear that the successful completion of such a program is not consistent with a finding of innocence." *Id.* at 43, 624 A.2d at 135. Citing 75 Pa.C.S. § 3731(e)(2), the court also noted that an ARD is treated as a conviction for certain

purposes. *Id.* The court cited *DeNillo v. DeNillo,* 369 Pa.Super. 363, 535 A.2d 200 (1987), a child custody case, in support of its holding. However, *DeNillo* did not concern whether admission into ARD can be used for impeachment purposes; it held that it may be used in determining a child's best interest in a custody dispute. *Id.* at 366, 535 A.2d at 202.

The court did not cite the numerous cases that have held that admission into an ARD program is not a conviction that may be used for impeachment. In *Commonwealth v. Krall,* 290 Pa.Super. 1, 434 A.2d 99 (1981), the court held that admission into an ARD program is not a conviction for purposes of impeachment. The court noted that admission into an ARD program "places the criminal proceedings in abeyance" so that a defendant can rehabilitate himself "without the necessity of trial and conviction." *Id.* at 5, 434 A.2d at 100–01.

In *Commonwealth v. Knepp,* 307 Pa.Super. 535, 453 A.2d 1016 (1982), the court, although recognizing that an ARD amounts to a conviction for purposes of classifying a motorist as a habitual offender, cited *Krall* and stated that admission to an ARD program "is not equivalent to a conviction under any circumstance...." *Id.* at 541, 453 A.2d at 1019. *See also Commonwealth v. Ferguson,* 377 Pa.Super. 246, 546 A.2d 1249 (1988) (ARD not conviction for impeachment purposes), *allocatur denied,* 521 Pa. 617, 557 A.2d 721 (1989); *Commonwealth v. Feagley,* 371 Pa.Super. 593, 538 A.2d 895 (1988) (ARD not conviction for impeachment purposes); *Commonwealth v. McSorley,* 335 Pa.Super. 522, 485 A.2d 15 (1984) (citing *Knepp* and *Krall* ), *aff'd,* 509 Pa. 621, 506 A.2d 895 (1986).

Although, as the *Bowser* court recognized, admission into an ARD program may be treated as a conviction for certain purposes, those purposes are narrow in scope and, before *Bowser,* never included impeachment. In *Commonwealth v. Becker,* 366 Pa.Super. 54, 530 A.2d 888 (1987), an *en banc* court, in interpreting the sentencing provisions of Drunk Driving Act, 75 Pa.C.S.A. § 3731, which *Bowser* cites, held that acceptance of ARD is equivalent to a conviction. *Id.* at 65, 530 A.2d at 894. However, the court stated that,

354

We emphasize that our decision in the instant case is narrow in scope. We deal here only with the proper interpretation of § 3731(e)(2).... It is true that when the word 'conviction' appears in a statute it is usually taken to mean 'the ascertainment of the guilt of the accused and judgment thereon by the court[.] However, this technical definition of conviction could not be applied 'where the intention of the legislature is obviously to the contrary....'

*Id.* at 59, 530 A.2d at 890–91 (citations omitted).

██ Hence, in dealing with a statutory mandate, acceptance of ARD may be considered a conviction. Absent such a directive, however, this court has consistently held, outside of *Bowser,* that admission into an ARD is not a conviction for impeachment purposes. The court in *Bowser* did not cite, let alone provide a reason to abandon, the prior line of cases holding that admission into ARD is not a conviction for impeachment purposes. Furthermore, the authorities relied upon by *Bowser* do not hold that admission into ARD may be used for impeachment purposes. Because we have no reason to abandon the pre-*Bowser* line of established case law, we hold that the use of Brown's participation in an ARD program was not a conviction upon which his credibility could be impeached.

██ The Commonwealth contends that even if the trial court erred, the impeachment by use of the ARD was cumulative of other impeachment evidence and was thus harmless error. An error is deemed harmless if we are convinced beyond a reasonable doubt that the error could not have contributed to the verdict. *Nolen,* 535 Pa. at 85, 634 A.2d at 196. An error will be deemed harmless if: 1) the prejudice suffered was *de minimis;* 2) the erroneously admitted evidence was cumulative of other, properly admitted evidence which was substantially similar to the erroneous evidence; or 3) the evidence of guilt was so overwhelming as established by proper and uncontradicted evidence that the prejudicial effect was comparatively insignificant. *Id.*

■ The Pennsylvania Supreme Court has implicitly recognized that erroneously admitted impeachment evidence can be cumulative of properly admitted impeachment evidence. In *Commonwealth v. Williams*, 524 Pa. 404, 573 A.2d 536 (1990) (plurality), the prosecution properly impeached a witness with a prior conviction of attempted theft, and erroneously with prior convictions for crimes that did not involve dishonesty or a false statement. 524 Pa. at 407–09, 573 A.2d at 538. In deciding that the erroneous impeachment evidence was not cumulative of the attempted theft impeachment evidence, the court relied upon the fact that they were not substantially similar. *Id.* at 410–11, 573 A.2d at 539.

■ At trial, Brown testified that he pled guilty in 1978 to retail theft. He also testified that he was arrested for another theft in 1979, for which he was admitted into an ARD program. These events are identical in substance, and nearly identical in time. In the instant case, unlike the evidence admitted in *Williams*, the erroneously admitted evidence concerning the ARD was cumulative of the evidence of Brown's theft conviction: the theft conviction was properly admitted; the theft conviction was indisputable; and the theft conviction was not derived from the improper admission of the ARD evidence. *See Commonwealth v. Story*, 476 Pa. 391, 411–12 n. 21, 383 A.2d 155, 165 n. 21 (1978). In addition, the evidence was not used substantively, but was introduced to attack credibility. Thus, we hold that the error in admitting the ARD evidence for impeachment was harmless in light of the other, properly admitted impeachment evidence.

Brown's second contention is that if we find that trial counsel waived the ARD issue by not objecting to the trial court's jury charge, then trial counsel was ineffective. Because we have not found that trial counsel waived the issue, we need not address this issue.

■ Finally, Brown alleges that trial counsel was ineffective in failing to object to statements made during the Commonwealth's closing argument. In order to prevail on a claim of ineffectiveness, Brown must demonstrate that the underly-

ing claim is of arguable merit, the particular course of conduct did not have a reasonable basis designed to effectuate his interests, and the alleged ineffectiveness prejudiced him. *Commonwealth v. Blount,* 538 Pa. 156, 163, 647 A.2d 199, 203 (1994). If the underlying claim is meritless, counsel cannot be deemed ineffective. *Id.*

In reviewing a claim of prosecutorial misconduct in closing argument, our scope of review is limited to determining whether the trial court abused its discretion in ruling that no misconduct occurred. *Commonwealth v. Simmons,* 541 Pa. 211, 244–48, 662 A.2d 621, 638–39 (1995). Prosecutorial comments do not constitute reversible error, unless the unavoidable effect of the comments would prejudice the jury by causing bias and hostility impeding their ability to objectively weigh the evidence and return a true verdict. *Id.* at 246–48, 662 A.2d at 639.

During Brown's closing, trial counsel referred to the fact that Brown's co-worker, Walter Tate (Tate), was not called by the Commonwealth:

Walter Tate. Walter Tate worked at the cemetery. Antoine Brown tells you his version of what happened and he says he leaves Walter Tate in the X section of the cemetary [sic] and then goes to the bathroom and comes back to get Walter after the discovery is made of Mr. Rase. Now, if that's not true and Walter still works for the cemetary [sic], bring Walter in. Let Walter say that's not what happened.

(N.T. 2/23/94 at 19–20.)

In response, the Commonwealth made the following argument,

It's a free world. Anyone can call witnesses. They have not one obligation to put on one iota of defense. They chose to put on a defense. Ladies and gentlemen, from the evidence that we put forth to you, it is, it has been and it always will be the position, although [Rase] cannot and will not identify someone who he didn't see doing something to him, that Walt Tate is the unindicted co-conspirator. I got a little problem calling the unindicted co-conspirator to the

stand. He sort of has a constitutional right against incriminating himself. So try not to hold the fact that we couldn't call Walter Tate to testify, because Walter Tate, I submit to you, was over there either waiting with that tractor or that vehicle and was let in exactly how John Fital testified.... Billy Rase cannot say that Walter Tate was involved in this, so Walter Tate remains and he always will remain a free man. He can only identify the person who actually brutally assaulted him, the person he's always identified as the defendant.

(N.T. 2/23/94 at 53–54.)

Brown claims that by calling Tate an "unindicted co-conspirator," the Commonwealth is shifting Tate's "illusory guilt" of the possibility of his not testifying to Brown. He also alleges that the comments gave the jury a basis to believe that if Tate would have testified, he would have incriminated both himself and Brown. Lastly, Brown claims that the Commonwealth's statement that Tate would exercise his Fifth Amendment rights was based upon a "raw assertion."

Brown's argument is without merit. The Commonwealth may "fairly respond" to closing remarks made by the defense. *Commonwealth v. Griffin*, 537 Pa. 447, 462, 644 A.2d 1167, 1175 (1994). Brown's closing argument implies that the Commonwealth did not call Tate because he would have been an adverse witness to the Commonwealth's case. In response, the Commonwealth did not use Tate's Fifth Amendment rights as evidence of Brown's guilt; it used them to explain why it did not call Tate. In addition, both the trial court and the Commonwealth reminded the jury that Brown had no burden to put on a defense.

The Commonwealth's belief concerning Tate was not based upon a "raw assertion." Based upon the evidence presented, the Commonwealth had a reasonable basis to believe that Tate would invoke his Fifth Amendment rights: Tate and Brown were working together in the same section of the cemetery; both were observed near the area where Rase was assaulted shortly thereafter; and Tate was placed in a photo array

presented to Rase by the police. (N.T. 2/17/94 at 43–44, 61–62; 2/22/94 at 42–44.)

A review of the case law reveals that comments by a prosecutor, which would otherwise be in error, have been held not to be erroneous if made in response to a defense argument. In *Commonwealth v. Fielder*, 417 Pa.Super. 455, 612 A.2d 1028 (1992), *allocatur denied*, 533 Pa. 630, 621 A.2d 577 (1993), the appellant alleged that the Commonwealth implied that he had an obligation to put on a defense by noting that a witness was not called. 417 Pa.Super. at 472, 612 A.2d at 1037. The court held that in light of the defense counsel's closing, in which counsel questioned why a witness was not present, the Commonwealth's closing was permissible. *Id.* at 473, 612 A.2d at 1037. In *Commonwealth v. Hess*, 378 Pa.Super. 221, 548 A.2d 582 (1988), *allocatur denied*, 522 Pa. 618, 563 A.2d 887 (1989), the court held that because defense counsel stated in opening argument that the defendant would testify, and the defendant never did so at trial, the Commonwealth could comment on his failure to testify. 378 Pa.Super. at 221, 548 A.2d at 587. *See also Commonwealth v. Riggins*, 374 Pa.Super. 243, 542 A.2d 1004 (1988) (statement that the presumption of innocence is a cloak and "not a shield for the guilty to hide behind" was proper in response to an analogous statement made during defense closing), *allocatur denied*, 522 Pa. 583, 559 A.2d 527 (1989).

The Commonwealth's comments, which were not directed to Brown's Fifth Amendment rights, were made in direct response to a defense argument. Thus, we hold that the jury was not improperly influenced; and trial counsel was not ineffective for failing to raise a meritless objection.

Affirmed.

WIEAND, J., files a concurring and dissenting statement.

WIEAND, Judge, concurring and dissenting.

I agree with the majority that the trial court erred by allowing appellant to be impeached with his prior admission into an Accelerated Rehabilitative Program (ARD) following

an arrest for theft. However, I cannot agree that this error was harmless beyond a reasonable doubt. Accordingly, I would reverse the judgment of sentence and remand for a new trial.