J-S10023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN MICHAEL JOHNSON | : | |
| | : | |
| Appellant | : | No. 1237 MDA 2021 |

Appeal from the Judgment of Sentence Entered May 11, 2021
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0000858-2019

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: JULY 1, 2022**

John Michael Johnson was convicted and sentenced for persons not to possess firearms.[1] He argues on appeal that the trial court erred in denying his motion *in limine* to preclude the Commonwealth from presenting evidence of more than one predicate offense. He also argues the court erred in denying his post-sentence motions raising a challenge to the weight of the evidence and alleging prosecutorial misconduct. We affirm.

The trial court recounted the essential underlying facts as follows.

[T]he Pennsylvania State Police and [Johnson's] parole officer were contacted to perform a welfare check on [Johnson] on October 23, 2019. Upon their arrival at the residence, [Johnson] was outside the residence with layers of heavy clothing on. [Johnson] was asked if he had any weapons on his person. He admitted to possessing a buck knife in his waist band, but did not

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. § 6105.

admit to possessing a firearm. Upon patting him down, they felt what was thought to be a barrel of a rifle. His parole officer asked him if it was a rifle and [Johnson] did not say anything. They continued searching him, taking layers of clothing off [of] him and found a rifle with the stock tight to [Johnson's] chest and the barrel at the end of his inner thigh. The rifle was a J Stevens Arms .22 caliber long gun. [Johnson] has felony convictions which, pursuant to [18 Pa.C.S.A. § 6105(a)(1)], prohibit him from possessing same. The firearm was not loaded.

Trial Court Opinion, filed November 9, 2021, at 1. The Commonwealth charged Johnson with persons not to possess firearms. *See* 18 Pa.C.S.A. § 6105(a). Johnson gave notice of a defense of insanity.

Johnson moved *in limine* offering to stipulate that he had been previously convicted of an offense which made him ineligible to possess a firearm on the date of his arrest. At a hearing, the Commonwealth declined the stipulation. Johnson amended his motion to ask the court to exclude evidence of more than one predicate conviction. He argued evidence of additional convictions would be cumulative and unfairly prejudicial. The court denied the motion.

At Johnson's jury trial, the Commonwealth presented evidence through the testimony of the Chief Deputy Clerk of Courts for Bradford County that Johnson had five previous criminal convictions on his record. The witness informed the jury that Johnson had pleaded guilty in 2012 to Delivery of a Controlled Substance, as an ungraded felony, and was sentenced to serve a minimum of eight months and a maximum of three years' confinement. *See* N.T. January 22, 2021 (Trial), at 17-18. She further testified that in 2016, Johnson had been convicted of burglary, graded as a second-degree felony;

- 2 -

criminal conspiracy to commit burglary, graded as a second-degree felony; criminal trespass, graded as a second-degree felony; and theft by unlawful taking, graded as a third-degree felony. *See id.* at 19.

The Commonwealth also presented Johnson's parole agent, Brian Berry, who testified to Johnson's arrest, as set forth in the trial court's recitation above. *See id.* at 29-31. Berry further testified that when he arrived at Johnson's residence, he found Johnson wearing camouflage clothes, with binoculars around his neck. *See id.* at 30. Johnson appeared to Berry to be delusional and paranoid. *See id.* at 37-38. Johnson told Berry that people were watching him and attempting to poison him, and that his mother had been kidnapped and was being held in the basement. *See id.* at 38. Johnson also informed Berry that he had not been taking his medications. *See id.*

Berry additionally testified that the parole office had referred Johnson to mental health treatment in late August 2019, and for drug and alcohol treatment. *See id.* at 35-36, 40. Berry said that Johnson's mother had contacted him the day before the arrest to tell him that she was concerned because Johnson had been acting strangely and not taking his medications. *See id.* at 37.

Johnson testified on his own behalf. He told the jury that since he was 17 years old, he has suffered from schizophrenia, bipolar disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. *See id.* at 53. He said he was not taking any medications on the date of his arrest and had been without medications for the preceding three months because he had

been awaiting an appointment at the counseling center to which the parole office had referred him. *See id.* at 53-54. Johnson stated that when he is unmedicated, he experiences audio and visual hallucinations and paranoia. *See id.* at 54. Johnson testified that on the date of his arrest, he believed he heard his mother scream that she was being held hostage in the basement, and, having no cell phone reception to call for help, he went into a panic. *See id.* at 55. Johnson testified that he does not recall possessing a firearm or being arrested, and his next memories are from several days later. *See id.* at 55-56. He said it took seven to nine months for the medication he received in prison to resolve his symptoms. *See id.*

Johnson's mother testified about his history of mental illness. *See id.* at 60. She said she called the parole office on the date before the offense to tell them that Johnson had been acting strangely. *See id.* at 61. She stated Johnson had been delusional and paranoid, was afraid people were after him, and feared she would poison him. *See id.* at 62-64. She testified that Johnson's symptoms go away when he takes his medication, and that he does not have a history of drug and alcohol abuse. *See id.* at 64-65.

Johnson also presented the testimony of Dr. George Sowerby, as an expert witness in the field of psychiatry. *See id.* at 71. Dr. Sowerby testified that he had diagnosed Johnson in both November 2018 and August 2020 with schizoaffective disorder. *See id.* at 71-72. He stated Johnson has "an extensive history" of psychiatric treatment, including at least 12 hospitalizations. *See id.* at 73. He explained that schizoaffective disorder "is

a disturbance of both thought and emotion" and is "by definition accompanied by perceptual disturbances such as hearing voices, occasionally seeing things that aren't there." *Id.* at 74. Dr. Sowerby stated the disorder additionally causes vacillations in mood and lapses in memory. *See id.* at 74-75. Dr. Sowerby testified that Johnson had tried on at least two occasions to have the counseling center prescribe medications but had still been in the waiting period for an evaluation at the time of his arrest. *See id.* at 76-77.

Dr. Sowerby testified that the episode, as Johnson reported it, could have been caused by schizoaffective disorder. *See id.* at 77. Dr. Sowerby stated that in his expert opinion, Johnson was not aware at the time of his arrest that he was in possession of a firearm, and probably did not understand that possessing a firearm was wrong. *See id.* at 78. On cross-examination, Dr. Sowerby admitted that after his August 2020 evaluation of Johnson, he wrote a letter to Johnson's previous attorney stating that Johnson had "probably possessed" an understanding of right versus wrong on the date of his arrest. *See id.* at 81. Dr. Sowerby also testified that in the same letter he had stated that Johnson "most likely had no appreciation whatsoever for the wrongfulness of his actions." *See id.* at 85.

Finally, Johnson presented the testimony of Stephen Wilmot, a mental health officer from the prison where Johnson was being detained. *See id.* at 86. Wilmot testified that Johnson had been delusional when he was admitted, and "was afraid that everybody was out to get him basically." *See id.* at 87.

During the jury charge, the trial court reviewed Johnson's criminal history and instructed the jury that it "must not infer guilt from the evidence of [Johnson's] prior convictions." *See id.* at 110. The court specified that the jury could consider some prior convictions to determine whether Johnson was prohibited from possessing a firearm, and some prior convictions to decide if Johnson was a credible witness:

> Now, you've heard evidence tending to prove that the defendant was guilty of the following offenses, they are: Delivery of a Controlled Substance, Burglary, Conspiracy to Commit Burglary, Criminal Trespass, and Theft by Unlawful Taking. He is not on trial for these offenses.
>
> This evidence is also not evidence of his guilt. You must not infer guilty from the evidence of prior convictions. This evidence is before you for limited purposes and there's two. The first purpose is for the convictions of Burglary and Delivery of a Controlled Substance. They are admitted for the purpose of proof of an element of the specific offense for which the defendant is on trial for [sic]. So when I give you the definition of the crime in a few minutes of what the defendant is on trial for, you'll see that the - these two offenses and convictions are part of that definition and that is the only reason that they are being admitted at this point in time. The second purpose, however, is that the conviction of the Burglary, the Conspiracy to Commit Burglary, and the Theft by Unlawful Tak[ing] are the purpose to help you judge the credibility and weight of the testimony given by the defendant as a witness in the trial.
>
> In considering the evidence of prior convictions of those, that is the Burglary, Conspiracy to Commit Burglary, and Theft by Unlawful Taking, you may consider the type of crime committed, how long ago it was committed, and how it may affect the likelihood that the defendant has testified truthfully in this case.

*Id.* at 110-11.

On January 22, 2021, the jury found Johnson guilty but mentally ill. The court sentenced Johnson on May 11, 2021, to serve 36 to 72 months' confinement, and, after finding Johnson to be severely mentally disabled and in need of treatment pursuant to the Mental Health Procedures Act,[2] ordered the Department of Corrections to provide Johnson with psychiatric and psychological treatment.

Johnson filed two post-sentence motions. First, he moved for a new trial, asserting the Commonwealth had engaged in prosecutorial misconduct. Johnson argued that in February 2021, just 12 days after his jury conviction, the prosecutor in his case—who, at the time of Johnson's trial, was the District Attorney for Bradford County—had been charged with multiple crimes. Johnson noted that shortly before Johnson's sentencing hearing the prosecutor had pleaded guilty to promoting prostitution, intimidation of a witness, and obstruction of justice.

Johnson argued that in his case, the prosecutor had engaged in misconduct (1) during jury selection, when he stated to the jury panel "that he had volunteered on a school board in Bradford County, attended church, and was otherwise an upstanding citizen of the Commonwealth," and (2) when he stated during closing arguments that Johnson "was like a child who got caught stealing from the cookie jar and then fabricated claims to deflect responsibility for the crime." Post Sentence Motions, May 17, 2021, at ¶¶ 24,

---

[2] *See* 42 Pa.C.S.A. § 9727(a).

25. Johnson claimed these statements painted a false picture of the prosecutor and were prejudicial. *Id.* at ¶¶ 27, 28. He also argued that Johnson's entire trial was now suspect because of the District Attorney's crimes.

Second, Johnson moved for a judgment of acquittal by reason of insanity or for a new trial based upon the weight of the evidence. He argued that the testimony established that he was legally insane when he possessed the firearm and the Commonwealth had presented no rebuttal expert testimony. Following a hearing, the court denied the motions.

Johnson filed a timely notice of appeal. He raises the following issues:

1. Whether the [t]rial [c]ourt erred by holding that the Commonwealth was permitted to enter multiple convictions into evidence to prove that Mr. Johnson was a person not to possess a firearm under 18 Pa.C.S.A. § 6105 when only the submission of one conviction into evidence was necessary?

2. Whether Mr. Johnson should be awarded a new trial based upon the weight of the evidence?

3. Whether the [t]rial [c]ourt erred by not granting a new trial based upon prosecutorial misconduct?

Johnson's Br. at 5 (suggested answers omitted).

## I. Motion in Limine

Johnson argues the court erred in denying his motion *in limine*. He asserts that the Commonwealth only needed proof of one enumerated conviction to establish he was ineligible to possess a firearm under 18 Pa.C.S.A. § 6105(a). According to Johnson, the introduction of evidence of multiple prior convictions was therefore cumulative and prejudicial.

We review the admission of evidence for an abuse of discretion or error of law. **Commonwealth v. Mitchell**, 902 A.2d 430, 452-53 (Pa. 2006). We apply the harmless error standard to an erroneous ruling on an evidentiary issue. **Id.**

As applicable here, the persons not to possess firearms statute provides that a person may not possess a firearm if "convicted of an offense enumerated in subsection (b) . . . or whose conduct meets the criteria in subsection (c)[.]" 18 Pa.C.S.A. § 6105(a). The Commonwealth therefore bore the burden of proving beyond a reasonable doubt that Johnson had been convicted of an enumerated offense in subsection (b) or met the criteria in subsection (c).

The trial court relied on **Commonwealth v. Jemison**, 98 A.3d 1254 (Pa. 2014), when denying the motion. **See** Trial Ct. Op. at 2. In **Jemison**, the defendant "sought to stipulate only that he had been convicted of one of the enumerated offenses" under 18 Pa.C.S.A. § 6105(a) without identifying the specific offense. **Jemison**, 98 A.3d at 1256. The trial court allowed the Commonwealth to refuse the stipulation and introduce evidence of the defendant's previous robbery conviction. The court then instructed the jury, both immediately and in its final charge, not to consider the conviction as evidence of the defendant's propensity to commit crime, but only as evidence of the element of the crime charged. **Id.**

The Supreme Court of Pennsylvania held that the Commonwealth need not accept a defense stipulation that the defendant was ineligible to possess

- 9 -

a firearm because of a prior conviction, without identifying the disqualifying offense. *Id.* at 1261. The Court explained that because the jury is charged with finding a statutory element of a crime beyond a reasonable doubt, it did not agree that "a defendant suffers unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified, predicate offense, which has been offered by the Commonwealth to prove the prior conviction element of § 6105." *Id.* at 1262. The Court further observed that the possibility of unfair prejudice can be mitigated by proper cautionary instructions to the jury, which should instruct it "to consider the defendant's prior offense only as evidence to establish the prior conviction element of the § 6105 charge, not as evidence of the defendant's bad character or propensity to commit crime." *Id.*

Even assuming, *arguendo*, that the court erred in allowing the Commonwealth to introduce evidence of multiple enumerated offenses to prove Johnson's ineligibility to possess a firearm, the error was harmless. An error in a criminal case "will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict." **Mitchell**, 902 A.2d at 452 (cleaned up).

Even though the Commonwealth introduced evidence of five prior convictions, there was in effect evidence of only one prior conviction for purposes of establishing a disabling conviction. This is because the other four convictions—all but delivery of a controlled substance—were admissible to impeach Johnson's testimony. *See* Pa.R.E. 609(a); **Commonwealth v.**

*Howard*, 823 A.2d 911, 912 (Pa.Super. 2003) (holding defendant who testifies may be impeached with prior convictions under Pa.R.E. 609).[3] Although the Commonwealth introduced Johnson's criminal history before he testified, Johnson does not challenge the sequence on appeal. Moreover, the Commonwealth apparently introduced all five offenses knowing that Johnson intended to testify. As four of the convictions would have been admissible regardless of the trial court's pre-trial ruling, evidence of only one conviction— delivery of a controlled substance—went solely to establish Johnson's ineligibility to possess a firearm. Pursuant to *Jemison*, evidence of a single conviction is relevant and not overly prejudicial. *Jemison*, 98 A.3d at 1262.

Second, the trial court gave a limiting instruction. It informed the jury that the evidence of Johnson's previous convictions was not evidence of his guilt. *See* N.T. at 110. It specified that the evidence of Johnson's conviction for delivery of a controlled substance was admitted as proof of an element of the specific offense for which Johnson was on trial, and part of the definition

---

[3] *See also Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa.Super. 2011) (stating conspiracy is admissible for impeachment purposes); *Commonwealth v. Harris*, 884 A.2d 920, 925 (Pa.Super. 2005) (burglary); *Commonwealth v. Brown*, 673 A.2d 975, 978 (Pa.Super. 1996) (theft); *Commonwealth v. Walker*, 559 A.2d 579, 583 (Pa.Super. 1989) (criminal trespass).

of the crime with which Johnson had been charged. *Id.*[4] We presume the jury followed the court's instruction. *Jemison*, 98 A.3d at 1263.

Because the Commonwealth introduced evidence of only one conviction that went solely to his firearm ineligibility, and the others were admissible for impeachment purposes, and because the court gave a limiting instruction, we conclude the court's error in denying the motion was harmless. Johnson is not entitled to relief.

## II. Weight of the Evidence

In his second issue, Johnson argues that the verdict was against the weight of the evidence. In his view, the weight of the evidence supported a verdict of not guilty by reason of insanity. Johnson points to testimony of multiple witnesses that he has schizophrenia or schizoaffective disorder: his parole officer, Berry; his expert witness, Dr. Sowerby; a correctional officer; Johnson's mother; and Johnson himself. He argues that each testified that his mental health deteriorates when he is unmedicated, and he was unmedicated, delusional, paranoid, and hallucinating at the time of the offense. Johnson contends that the only potential evidence of his sanity was Dr. Sowerby's testimony that he had written in a letter that Johnson had "probably

---

[4] The court did not include criminal trespass when it instructed the jury about convictions that the jury could consider as evidence of predicate offenses for persons not to possess, even though it is an enumerated predicate offense. The court similarly omitted criminal trespass when it told the jury about considering prior convictions when determining credibility. Johnson does not take issue with the court's charge, and the discrepancies have no bearing on our holding, as the court instructed the jury that it could not take any of the prior convictions as evidence of guilt.

possessed" an understanding of right versus wrong at the time of his arrest. Johnson states that another portion of the same letter contradicted this evidence, where Dr. Sowerby wrote that Johnson had had no appreciation of the wrongfulness of his actions.

A trial court may sustain a challenge to the weight of the evidence only where "the verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Zewe*, 663 A.2d 195, 198 (Pa.Super. 1995). We review the trial court's ruling on a weight claim for an abuse of discretion, mindful that "it is not the function of an appellate court to substitute its judgment based on a cold record for that of the trial court." *Id.*; *see also Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa.Super. 2019). Issues of credibility and conflicting evidence are the province of the factfinder, which is free to believe all, part, or none of the evidence. *Zewe*, 663 A.2d at 198-99.

A verdict of guilty but mentally ill is proper where the defendant has pursued an insanity defense, and the trier of fact finds, beyond a reasonable doubt, that the defendant is guilty and was mentally ill at the time of the offense, but not legally insane. *See* 18 Pa.C.S.A. § 314(a). For this purpose, "mentally ill" means "[o]ne who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." *Id.* at (c)(1). A defendant was insane at the time of an offense if the defendant was "laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act [the actor] was doing or, if the actor did know the quality of

the act, that he did not know that [it] was wrong." 18 Pa.C.S.A. § 315. **See also Commonwealth v. Sohmer**, 546 A.2d 601, 604 (Pa. 1988).

The trial court denied Johnson's challenge to the weight of the evidence. It concluded that he had failed to demonstrate "that the evidence presented was tenuous, vague, or uncertain, or that the verdict was so contrary to the evidence as to shock the [c]ourt's conscience." Opinion on Post Sentence Motions, filed September 13, 2021, at 7.

This was not an abuse of discretion. The evidence regarding Johnson's sanity was mixed and the jury was free to disbelieve the portions supporting a finding of insanity and credit those undermining it. Although the testimony indicated that Johnson was delusional at the time of his arrest, this does not necessarily prove by a preponderance that Johnson did not know he possessed a firearm or that it was wrong for him to do so. On the one hand, Dr. Sowerby testified that Johnson was not aware he had possessed a firearm and "probably" did not understand that possession a firearm was wrong. N.T. at 78. On the other hand, supporting a verdict of guilty but mentally ill, Dr. Sowerby testified that he had told Johnson's previous lawyer that Johnson had probably understood the difference between right and wrong at the time of his arrest, but had lacked appreciation for the wrongfulness of his actions. There was also Berry's testimony that when he asked Johnson if he had any weapons on him, Johnson responded that he only had a hunting knife; that was evidence that Johnson understood that possessing the firearm was wrong.

The trial court's rejection of Johnson's weight claim was not an abuse of discretion. *Zewe*, 663 A.2d at 198.

### III. Prosecutorial Misconduct

Johnson argues the court abused its discretion in denying his post-sentence motion alleging prosecutorial misconduct. Johnson claims that the prosecutor engaged in misconduct during jury selection when he stated to the jury panel "that he had volunteered on a school board in Bradford County, attended church, and was otherwise an upstanding citizen of the Commonwealth." Post Sentence Mot., May 17, 2021, at ¶ 24. Johnson also argues the prosecutor engaged in misconduct during closing arguments, when he stated that Johnson "was like a child who got caught stealing from the cookie jar and then fabricated claims to deflect responsibility for the crime." *Id.* at ¶ 25. Johnson claims both statements were prejudicial because they deceived the jury. He further points out that the prosecutor in his case later pleaded guilty to charges including obstruction of justice and intimidation of a witness. He claims that the crimes the prosecutor committed implicate the integrity of the legal process and justice system and call into question the fairness of Johnson's entire trial and require the grant of a new trial.

A trial court may grant relief on a claim of misconduct if the prosecutor's comments had the "unavoidable effect" of "prejudice[ing] the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." ***Commonwealth v. Judy***, 978 A.2d 1015, 1020 (Pa.Super. 2009)

(citation omitted). We review a decision not to grant a new trial based on prosecutorial misconduct for abuse of discretion. ***Commonwealth v. Reid***, 259 A.3d 395, 425 (Pa. 2021).

The trial court denied the motion as to the prosecutor's comments because Johnson did not specify how either of the statements caused him prejudice. Op. on Post Sentence Mot. at 3. It found no impropriety to the prosecutor's jury selection statements, as he made them "in order to ascertain if the [potential] jurors had ever encountered him or recognized his name" and thereby ensure there were no jurors with an interest in the outcome of the case. ***Id.*** at 3-4 (quotation marks omitted). It also found the prosecutor's remarks during closing were "an appeal to the collective intelligence and logic of the jury in assessing all of the evidence adduced during trial," not "of such a character as to inflame the passions of the jury or to have seriously mislead or distracted the jurors," and nothing more than oratorical flair. ***Id.*** at 4-5. Regarding the prosecutor's guilty pleas, the court refused to grant a new trial because "[t]he facts of [the prosecutor's] criminal conduct have nothing to do with the prosecution of [Johnson's] case." ***Id.*** at 2.

We discern no abuse of discretion in this regard. Johnson provides no authority to support his bald assertions that the prosecutor's statements were improper or prejudicial. Nor does he draw any connection between the prosecutor's criminal convictions and the prosecution of his own case. Johnson admits that "no information regarding the investigation [into the prosecutor's criminal activity] was made known to the public and no charges were filed

prior to the trial." Johnson's Br. at 37. There were therefore no outstanding questions regarding the prosecutor's integrity at the time of Johnson's trial. We cannot agree that the fairness of Johnson's trial is in doubt, without a specific, substantiated allegation of misconduct at his own trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/2022