J-A30011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KANIKA OUM | |
| Appellant | No. 1939 EDA 2013 |

Appeal from the Judgment of Sentence June 13, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001090-2012

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 30, 2015**

Kanika Oum appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County.  We affirm in part, and vacate and remand in part, and we rely upon the opinion authored by the Honorable Charles J. Cunningham, III.

On November 1, 2011, Oum and his co-defendant, Samneang Samneang,[1] shot a fifteen-year old boy in the face near the intersection of 75th Street and Buist Avenue in Southwest Philadelphia.  Following trial, a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Co-defendant's name is Samneang Sin, however he was charged and tried as Samneang Samneang.  **See** N.T. Trial, 2/27/13, at 49-50.  Samneang's related appeal is docketed at 1824 EDA 2013.

jury convicted Oum of attempted murder,[2] criminal conspiracy,[3] aggravated assault,[4] violation of the Uniform Firearms Act (VUFA),[5] and possession of an instrument of crime (PIC).[6]

The court sentenced Oum to a term of imprisonment of 15-30 years for attempted murder, a consecutive term of 5-10 years on the conspiracy conviction, and a consecutive term of 2-5 years on the VUFA conviction, for an aggregate term of 22-45 years' imprisonment. The court imposed no further penalty on the PIC conviction. The court also determined the aggravated assault conviction merged for sentencing purposes.

Oum filed a timely appeal to this Court. The trial court ordered Oum to file a Rule 1925(b) statement within 21 days. **See** Pa.R.A.P. 1925(b). After seeking an extension of time, which the court granted, Oum filed his Rule 1925(b) statement on September 12, 2013. He now raises the following issues for our review:

---

[2] 18 Pa.C.S. §§ 901(a), 2502(a).

[3] 18 Pa.C.S. §§ 903(a), 2502(a).

[4] 18 Pa.C.S. § 2702(a).

[5] 18 Pa.C.S. § 6106.

[6] 18 Pa.C.S. § 907(a).

1. Did the trial court err in permitting the Commonwealth to repeatedly elicit hearsay?

2. Did the trial court err in permitting testimony that Defendant had been seen with a firearm prior to the shooting, where the incident was remote and unrelated, and Defendant was not the alleged shooter in the case at trial, making the probative value of this evidence outweighed by its prejudicial impact on the jury?

3. Did the trial court err by permitting the prosecutor to elicit prejudicial testimony that Defendant's brother had asked a witness not to come to court?

4. Did the trial court err by refusing to declare a mistrial after the prosecutor impermissibly implied during his closing argument that Defendant had a burden to produce witnesses and evidence in his defense?

5. Should this Court remand the matter for re-sentencing in light of the lower's court's *sua sponte* recognition that Defendant's sentence is improper?

Appellant's Brief, at 14.

Upon review of the parties' briefs, the relevant law, and the record as a whole, we find that the trial court has correctly disposed of issues 1-4 in his opinion. **See** Opinion, 2/7/14, at 8-19. Therefore, we affirm the convictions based on Judge Cunningham's opinion.

With respect to Oum's fifth issue, the trial court acknowledged in its Rule 1925(a) opinion that Oum's sentence was illegal. The court sentenced Oum to 15-30 years for attempted murder, and a consecutive term of 5-10 years on the conspiracy to commit murder conviction. As the trial court recognized, Oum could not be sentenced for two inchoate crimes for conduct designed to culminate in the same offense, that is, murder. Section 906 of

the Crimes Code precludes conviction of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy "for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906. *See Commonwealth v. Kelly*, 78 A.3d 1136 (Pa. Super. 2013) (sentence for conspiracy and attempted murder should have merged); *see also Commonwealth v. Martinez*, 438 A.2d 984 (Pa. Super. 1981) (where criminal conspiracy to commit burglary and subsequent attempted burglary constituted "conduct designed to culminate in the commission of the same crime," that is, burglary, defendant should not have been sentenced for both attempt and conspiracy, but should have only been sentenced for one or the other); *Cf. Commonwealth v. Jacobs*, 39 A.3d 977 (Pa. 2012) (where defendant's convictions for two inchoate crimes had separate criminal purposes they did not merge.)

We agree with the trial court's assessment. Therefore, we vacate the judgment of sentence and remand for resentencing in accordance with 18 Pa.C.S. § 906. *See Commonwealth v. Watts*, 465 A.2d 1267 (Pa. Super. (1983). Counsel is directed to attach a copy of the trial court's opinion in the event of further proceedings in this matter.

Affirmed in part; vacated and remanded in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2015

COURT OF COMMON PLEAS

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CRIMINAL TRIAL DIVISION

**FILED**

FEB - 7 2014

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH OF PENNSYLVANIA     :

v.     :

KINIKA OUM     :

1939 EDA 2013

CP-51-CR-0001090-2012

CP-51-CR-0001090-2012 Comm v. Oum), Kanika
Opinion

7113717781

## OPINION

### STATEMENT OF THE CASE

Defendant appeals his conviction for attempted murder, criminal conspiracy and other related charges arising out of Defendant's participation in a shooting which occurred on November 1, 2011. Defendant raises numerous complaints regarding evidentiary rulings made by the Court during his trial. Defendant's complaints are without merit.

### PROCEDURAL HISTORY

On November 3, 2011 Defendant was arrested and charged with inter alia, 1) Criminal Attempt pursuant to 18 Pa.C.S.A. 901(a) to commit Murder pursuant to 18 Pa.C.S.A. 2502; 2) Aggravated Assault pursuant to 18 Pa.C.S.A. §2702(a); 3) Criminal Conspiracy pursuant 18 Pa.C.S.A. 903(a) to commit Murder pursuant to 18 Pa.C.S.A. 2502; and 4) Possession of an Instrument of a Crime With Intent pursuant to 18

1

Pa.C.S.A. 907(a). On March 4, 2013, at the conclusion of his jury trial Defendant was found guilty of the above charges. On June 13, 2013 Defendant was sentenced to three consecutive terms of confinement in a state correctional facility: three to eight years on the charge of attempted murder; two to five years on the charge conspiracy to commit murder; and one to two years on the charge of possession of an instrument of a crime, for a total period of confinement of six to fifteen years. The charge of aggravated assault having merged with the charge of attempted murder, no penalty was assessed.

On July 2, 2013, Defendant timely filed the instant appeal to the Superior Court of Pennsylvania. On July 9, 2013, this Court filed and served on Defendant an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On August 1, 2013 Todd Michael Mosser, Esq. was appointed to represent Defendant as appellate counsel. On August 9, 2013, this Court filed and served on Defendant an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing Defendant to file and serve a Statement of Errors Complained of on Appeal, within 21 days of the Court's Order. On August 27, 2013, Defendant filed: "Appellant's Request for Extension of Time to File 1925(b) Statement," which the Court granted. On September 3, 2013 the complete notes of testimony became available.[1] On September 12, 2013 Defendant timely filed his Statement of Errors Complained of on Appeal raising five issues, namely:

a. "The Court erred by allowing Vyreak Oum to testify to hearsay statement made to him by Seagull Mok, *see*, N.T. 2/27/13 at 192-195;

---

[1] On August 5, 2013 the trial notes of testimony became available. On August 27, 2013 the sentencing notes of testimony became available. On September 3, 2013 the notes of testimony relating to the rendering of the jury's verdict and the polling of the jury became available.

b. The Court erred by allowing the Commonwealth to elicit testimony from Vyreak Oum about seeing Defendant with a handgun in a prior, unrelated incident, where the facts of this unrelated incident were too remote, such that its probative value was outweighed by its prejudicial impact on the jury, N.T. 2/27/13 at 219-224;

c. The Court committed reversible error by allowing the Commonwealth to call undue attention to Vyreak Oum's prior statements by erroneously allowing multiple Commonwealth witnesses to offer hearsay testimony about Vyreak Oum's statements, which in and of themselves contained even more hearsay statements; N.T. 2/28/13, 58-62; 81-98

d. The Court erred by allowing the Commonwealth to elicit testimony from Seagull Mok about Defendant's brother telling him to not come to court, as the probative value of this evidence was outweighed by its prejudicial impact on the jury, N.T. 3/1/13, 6-7; and,

e. The prosecutor committed prosecutorial misconduct that warranted a mistrial when during closing argument he impermissibly commented on Defendant's burden of proof and right to remain silent, N.T. 3/1/13; 115-119."

Defendant's first and third complaint's essentially address the same issue and, therefore, will be addressed together.

## EVIDENCE AT TRIAL

The complainant, Quenzel Members, testified that on the evening of November 1, 2011 he was fifteen years old. At approximately 7:30 p.m., he was walking with three of his friends, Shyeheim, Nasir and Sammy. They encountered two asian males in the vicinity of 75th Street and Buist Avenue in the southwest section of the City of Philadelphia. (N.T., 2/27/2013, pgs. 81, 83) As he approached, he noticed one of the males leaning over a dark colored Honda and the other male sitting in the car. He

3

described the Honda as having blue headlights and a loud motor. (N.T., 2/27/2013, pgs. 84, 90-93, 97)

Mr. Members testified that he did not get a good look at the person in the car and was unable to identify him. (N.T., 2/27/2013, pgs. 90, 91, 111, 132) However, he did testify that this person was the driver and that the only feature he could identify was that his hair was "spiky." (N.T., 2/27/2013, pgs. 108-110)

As he drew near, an argument ensued and ended when the male outside the car said to the person inside "it's enough playing, pop the trunk." (N.T., 2/27/2013, pgs. 83, 85, 90, 91, 120) Taking this to mean Defendant "probably" had a gun, Mr. Members immediately left the scene, and went to Shyeheim's house on the next block. (N.T., 2/27/2013, pgs. 86, 88)

Mr. Members testified that, while sitting on the front steps of Shyeheim's house, he noticed the same car circling the block several times and acting "like they was looking for me." (N.T., 2/27/2013, pg. 93) He also testified that, on seeing this, he "felt threatened" and went to his own home, a short distance away, retrieved a .9 mm semi automatic hand gun from his back yard and returned to his friends. (N.T., 2/27/2013, pgs. 94-96)

Not seeing the car, he and his friends went to a park "five or six" blocks away and returned about five or ten minutes later. (N.T., 2/27/2013, pgs. 97-99) As they entered the alley behind Shyeheim's house, Mr. Members heard the engine of the car and then saw the blue headlights when it turned into the alley ahead of them. (N.T., 2/27/2013, pgs. 97-99) The car then approached and stopped next to him. Mr. Members saw the

4

passenger window of the car roll down and was shot once in the face from inside the passenger side of the car. (N.T., 2/27/2013, pgs. 100-102)

After being shot, Mr. Members ran back to his house, with two of his friends, called 911 for help and reported the shooting. (N.T., 2/27/2013, pgs. 102-104) He also testified that the responding police officers immediately placed him in the back of their patrol car and "rushed" him to the hospital for treatment. (N.T., 2/27/2013, pg. 104)

Corroborating Mr. Members' testimony, Mr. Nasir Abdul-Raheem (Nasir),[2] testified that on the evening of November 1, 2011 at approximately 7:30 p.m., while walking with Mr. Members and two other friends they encountered two asian males in the vicinity of 75th Street and Buist Avenue in the southwest section of the City of Philadelphia. (N.T., 2/27/2013, pgs. 146, 147) As they approached, he noticed one of the males leaning over a dark colored Honda with blue headlights and a loud motor, talking to the other male sitting in the car. Although he was able to identify the person standing outside the car, Nasir testified that he unable to see the person inside the car but described him as the driver and having "spiky hair." (N.T., 2/27/2013, pgs. 147-149, 151, 164)

As they drew near, a verbal altercation ensued between Mr. Members and the male leaning over the car ending when Defendant told the person inside the car to "pop the trunk." On hearing this he and his friends went to Shyeheim's house on the next block. (N.T., 2/27/2013, pgs. 152-154)

Nasir testified that, on arriving at Shyeheim's house, Mr. Members announced he was going to get "the gun." (N.T., 2/27/2013, pg. 153) Nasir also observed the Honda

---

[2] Nasir testified that at the time of trial he was sixteen years old, making him fourteen years old on November 1, 2011.

5

circling the block "five or six times" in a slow deliberate manner and felt nervous and scared, prompting him to hide behind a van parked in front of the house. (N.T., 2/27/2013, pgs. 154, 155)

When Mr. Members returned with a gun, the group went to a park and stayed approximately fifteen minutes before returning to Shyeheim's house. (N.T., 2/27/2013, pgs. 155, 156) As they approached the back of the house through the alley, Nasir observed the Honda approach them and stop next to them in the middle of the alley. (N.T., 2/27/2013, pgs. 156-159) Nasir then heard three shots and saw that Mr. Members, who was standing next to him, had been shot. (N.T., 2/27/2013, pgs. 150, 160)

Mr. Seagull Mok testified that on November 1, 2011, while dropping his car off in front of Vyreak Oum's house for repairs, he observed a black Honda Accord with two occupants pull up in front of the house. He described the car as having "purple" headlights and a loud muffler. He testified that one of the occupants's exited the car and asked him where Vyreak was. (N.T., 3/1/2013, pgs. 9-12) He described this person as being "kind of mad about something" and saying he "was going to fuck the bull up, or something like that." (N.T., 3/1/2013, pgs. 12, 13) After this exchange, this person got back in and the car left the scene. Mr. Mok testified that, approximately five minutes later, he heard gun shots and the saw the Honda at the end of the block. (N.T., 3/1/2013, pgs. 15, 16, 21, 22, 33) Mr. Mok then called Vyreak telling him not to come outside. (N.T., 3/1/2013, pg. 17)

Mr. Vyreak Oum testified that on the evening of November 1, 2011 he went directly to bed at approximately 7:05 p.m. after returning from work. (N.T., 2/27/2013, pgs. 187, 188) Sometime after going to bed he was awakened by a phone call from Mr.

Mok, who told him he was in front of his house dropping his car off for repairs and told him "don't come out here, there's gunshots." (N.T., 2/27/2013, pgs. 189, 192-195)

Shortly after this conversation, the police arrived at his door, arrested him and took him to Southwest Detectives where he gave a formal signed statement. (N.T., 2/27/2013, pgs. 196, 197) In his statement Mr. Oum stated that, after going to bed, "I got a phone call from a friend named Seagull Mok stating my cousin, Kanika Oum, and another guy named Sam came around in a black Honda Accord to the 7400 block of Buist Avenue and asked for me." (N.T., 2/27/2013, pgs. 201, 202) "Seagull then stated that Sam shouted out from the passenger window, I'm going to kill this -- I'm going to kill the boy while they were in the car." (N.T., 2/27/2013, pg. 205) On concluding the call, he stated: "Seagull then told me not to come outside and hung up." (N.T., 2/27/2013, pg. 208)

Mr. Oum further testified that he had seen Defendant in possession of a gun prior to the shooting of Mr. Members. (N.T., 2/27/2013, pgs. 219, 223) However, Mr. Oum equivocated as to when, simply saying it was "sometime before the incident." (N.T., 2/27/2013, pg. 226)

Detective Robert Conway testified that he was the assigned investigator for the investigation of the shooting of Mr. Members. He testified that Vyreak Oum was initially identified as a possible suspect in the shooting and was brought to the Southwest Detectives Division for questioning on November 2, 2011 at approximately 2:45 a.m. as part of his investigation. (N.T., 2/28/2013, pgs. 31, 32, 40, 45, 46) He also testified that Mr. Oum was initially interviewed by Detective Park. (N.T., 2/28/2013, pgs. 46, 47, 59)

7

Detective Conway testified that on November 2, 2011, at approximately 7:00 p.m., he took a second follow-up written signed statement from Mr. Oum. (N.T., 2/28/2013, pgs. 46, 47, 59) Detective Conway testified that when he asked him if he had ever seen Defendant "in possession of any firearms," a Mr Oum responded: "It was either at my house or at the Cambodian Temple about three weeks ago when he called me and asked to talk to my brother. He asked me to pick him up and come over to the house and chill because he was depressed about his girlfriend. We were inside of the temple when he pulled out a Chrome gun from below his belt buckle and whipped it down and put it back -- I'm sorry, wiped it down and put it back." (N.T., 2/28/2013, pgs. 60, 61)

## DISCUSSION OF THE ISSUES RAISED

I.  **THE ADMISSION OF IDENTIFICATION TESTIOMNY WAS RELEVANT AND PROBATIVE.**

In his first complaint, Defendant complains: "The Court erred by allowing Vyreak Oum to testify to hearsay statement made to him by Seagull Mok." In his second complaint, Defendant complains: "The Court committed reversible error by allowing the Commonwealth to call undue attention to Vyreak Oum's prior statements by erroneously allowing multiple Commonwealth witnesses to offer hearsay testimony about Vyreak Oum's statements, which in and of themselves contained even more hearsay statements." Defendant's complaints misstate the record. Vyreak Oum did testify that he received a phone call immediately after the shooting from Seagull Mok. Only one other witness, Detective Deayoung Park, who took a signed statement from Mr. Oum, testified with regard to the phone call from Mr. Mok. Defendant's complaints are without merit.

8

Defendant's complaint implicates his right to confrontation under the 6th Amendment under the United States Constitution and Article I, § 9 of the Pennsylvania Constitution. The Supreme Court of Pennsylvania, in *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (Pa. 1986), held that out of court testimonial statements made by non-party witnesses are admissible as substantive evidence if such witness is available to testify. *Brady* held: "The simple fact is that 'the usual dangers of hearsay are largely nonexistent where the witness testifies at trial.' *California v. Green, supra* at *399 U.S. 155, 90 S.Ct. at 1933.* By hypothesis in these situations, the out-of-court declarant is now a witness *in-court* where he or she is placed under oath, subject to cross-examination and under observation by the finder of fact. *See Commonwealth v. Thirkield, supra* at 502 Pa. 542, 467 A.2d 323 (McDermott, J. dissenting: 'the fact that [the oath and cross-examination requirement] are supplied in the current trial defuses hearsay concerns and provides the fact-finder with ample opportunity to determine truth.'). Indeed, the cross-examination to which a recanting witness is subjected will likely be meaningful and vigorous since the witness is already 'on the spot' in having to explain the discrepancies between earlier statements and direct testimony, or deny that the earlier statements were made at all." *Id.* 507 A.2d at 69 (In accord *Commonwealth v. Mollett,* 5 A.3d 291 (Pa. Super. 2010); *Commonwealth v. Charlton,* 906 A.2d 554 (Pa. Super. 2006)

The recently amended Pennsylvania Rules of Evidence (Pa.R.E.) provide in part at Rule 803.1 "The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement: "(1) **Prior Inconsistent Statement of Declarant-Witness.** A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:...(B) is

9

a writing signed and adopted by the declarant......(2) **Prior Statement of Identification by Declarant-Witness.** A prior statement by a declarant-witness identifying a person or thing, made after perceiving the person or thing, provided that the declarant-witness testifies to the making of the prior statement."

The only witness to identify Defendant as the driver was Seagull Mok. Neither the victim of the shooting, Mr. Members, nor his companion, Nasir, was able to identify the driver of the car involved. Mr. Oum's testimony that he received a call from Mr. Mok telling him that, Defendant, his cousin, had been in front of his house looking for him and not to come out because of gun shots clearly relates to the identity of one of the perpetrators. (N.T., 2/27/2013, pgs. 193, 194, 202) Mr. Oum's testimony that Mr. Mok had seen the car involved in the shooting and could identify its occupants is clearly admissible pursuant to Pa.R.E. 803.1(2).

Detective Park testified that he took a signed written statement from Mr. Oum on November 2, 2011, shortly after Mr. Members was shot. (N.T., 2/28/2013, pgs. 81, 84) Detective Park also testified that when he asked him what he knew about the shooting Mr. Oum responded that he had received a phone call from Mr. Mok who told him: "Kinika Oum and another Asian guy named Sam came around in a black Honda Accord to the 7400 block of Buist Avenue and asked for me. Seagull said they didn't say why they were looking for me, but Seagull told them that he didn't know where I was. Seagull then said that Sam shouted out from the passenger's side window, 'I'm going to kill the boy', while they were in a car. Seagull then said Kinika drove away. Within a minute Seagull said he heard gunshots coming from my cousin, Kinika's, Honda Accord. Seagull told me that he got into one of his friend's car and left the area. Seagull then told me not

10

to come outside and he hung up." (N.T., 2/28/2013, pgs. 87- 89) When asked if Mr. Mok told him who was driving the car, Mr. Oum responded: "My cousin, Kinika Oum, and Sam was the front passenger." (N.T., 2/28/2013, pg. 90) Detective Park's testimony was confined to the written statement he took from Mr. Oum, since Mr. Mok did appear and testify, it was clearly admissible pursuant to Pa.R.E. 803.1(1)(B).

Prior to admitting the testimony of both Mr. Oum and Detective Park, the Court made it clear that the testimony was being admitted solely on the condition that Mr. Mok would in fact testify and be subject to cross examination. (N.T., 2/27/2013, pg. 193) (N.T., 2/28/2013, pgs. 82, 88) Prior to permitting the testimony of Detective Park to proceed regarding the statement he took from Mr. Oum as it pertained to the call from Mr. Mok, the Court cautioned the jury: "As you will recall, we went through this when Vyreak Oum testified. And what I told you at that time was that these statements by Mok were admissible only if Mok comes in and appears before you and testifies before you. Otherwise, it's hearsay and they can't come in. And at that time I overruled the objection of defense counsel saying that somebody has to testify first. And we don't bring in three or four witnesses and have them all testify at the same time. And the DA said that Mok would be in, so we're waiting to see. Until then, you can listen to what he says." (N.T., 2/28/2013, pg. 88) Mr. Mok did in fact testify and was subject to cross examination by Defendant.

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Maloney*, 876 A.2d 1002, 1006 (Pa. Super. 2005) "An abuse of discretion is not merely an error in judgment, but

11

an 'overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record."' *Commonwealth v. Flamer*, 53 A.3d 82, 86 (Pa. Super. 2012) citing *Commonwealth v. Cascardo*, 981 A.2d 245, 249 (Pa.Super.2009) Our Superior Court in *Commonwealth v. Johnson*, 758 A.2d 166, 173 (Pa. Super. 2005), held: "The basic requisite for the admission of any evidence in a case is that it be competent and relevant. Though relevance has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact." (internal citations omitted)

Pa.R.E. at Rule 403 provide that "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. "Evidence is not unfairly prejudicial simply because it is harmful to the defendant's case. Rather, exclusion of evidence on this ground 'is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case.'"
**Commonwealth v. Foley**, 38 A.3d 882, 891 (Pa. Super. 2012)

The testimony of both Mr. Oum and Detective Park was obviously "harmful to Defendant but was not "unfairly prejudicial" to him. This is particularly so in light of the admission into evidence, without objection, of transcripts of phone conversations of

12

Defendant's co-defendan, recorded while he was incarcerated awaiting trial. In the first transcript, Defendant tells the party on the other end: "Yeah . The bull, Seagull from South Philly. He came the first time, but he switched it. He made a different statement, but I can't let him show up and shit." (N.T., 2/28/2013, pg. 108) The transcript from yet another conversation revealed:

> **Defendant**: "Fucking nut ass Seagull made a statement on me, too."
> **Male**: "Yeah? Want me to go and talk to the nigga? Want me to go talk to him?"
> **Defendant**: "We already got somebody to talk to him, but that bitch ass nigga came to court last time, but now we're trying to get somebody to talk to him to tell him not to come to court."
> **Male**: "Yeah, they'll do it." (Inaudible.)
> **Defendant**: "Man, if I do get out of here, I'mma fuck that nigga up."
> (N.T., 2/28/2013, pg. 109)

It is clear from the transcripts that Defendant was attempting to prevent Mr. Mok from testifying or, at the very least, influence his testimony as well as that of Mr. Oum. The testimony of Mr. Oum, which was corroborated by that of Detective Park, is relevant to the identity of the occupants of the Honda and portrays Mr. Mok's present sense of his observations before anyone had an opportunity to intimidate him or otherwise influence his testimony.

## II.  TESTIMONY OF DEFENDANT'S PRIOR BAD ACTS WAS ADMISSABLE.

Defendant in his second complaint states, "The Court erred by allowing the Commonwealth to elicit testimony from Vyreak Oum about seeing Defendant with a handgun in a prior, unrelated incident." Defendant's complaint is without merit.

13

Pa.R.E. Rule 404 provides in part: **(b) Crimes, Wrongs or Other Acts.** *(2)*......This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case, this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice." In *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1283 (Pa. Super. 2004) our Superior Court held: "It is axiomatic that evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes. This rule is not without exception, however. Evidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." Evidence that Defendant was seen in possession of a gun prior to the shooting is "admissible, as it tends to prove the means to commit the crime." *Commonwealth v. Brown*, 538 Pa. 410, 421, 648 A.2d 1177, 1182 (1994) A weapon shown to have been in a defendant's possession may be properly admitted into evidence even though it cannot be identified positively as *the* weapon used in committing a crime; it may tend to prove that the defendant had a weapon similar to the one used." *Commonwealth v. Lark*, 316 Pa. Super. 240, 254, 462 A.2d 1329, 1336-37 (1983) There is no "bright-line" threshold determining when the prior acts become too remote in time to be admissible pursuant to Rule 404. *Commonwealth v. Reed*, 990 A.2d 1158, 1168 (Pa. 2010)

14

On direct examination Vyreak Oum testified that he had seen Defendant possess a gun prior to the shooting of Mr. Members but equivocated as to when this occurred. (N.T., 2/28/2013, pg. 223) In his written statement to Detective Conway he clearly stated that he had seen Defendant with gun approximately three weeks prior to the shooting. (N.T., 2/28/2013, pg. 223) Defendant's possession of a gun within a period of three weeks prior to the shooting is sufficiently close in time to demonstrate his intent, the absence of mistake or accident, and a common scheme or plan.

## III. TESTIMONY AS TO WITNESS' STATE OF MIND WAS ADMISSABLE.

Defendant in his fourth complaint states; "The Court erred by allowing the Commonwealth to elicit testimony from Seagull Mok about Defendant's brother telling him to not come to court." Defendant's complaint is without merit.

"The term 'hearsay' is defined as an out-of-court statement, which is offered in evidence to prove the truth of the matter asserted.... Pa.R.E.801(c). Hearsay statements are generally inadmissible unless they fall under an enumerated exception. Pa.R.E. 802. An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement." *Commonwealth v. Busanet*, 54 A.3d 35, 68-69 (Pa. 2012) (internal citations omitted)

Prior to presenting testimony of the second day of trial, February 28, 2013, the Commonwealth requested that the Court issue a bench warrant to secure the presence of Mr. Mok the following day. Counsel for the Commonwealth, Mr. McCool, advised the Court that, although Mr. Mok had agreed to appear that day he was not present in the

15

courtroom. He further advised the Court that when he sent police officers to bring him to court, they were advised by his wife that she hadn't seen him. (N.T., 2/28/2013, pg. 5)

When Mr. Mok did appear on the third day of trial, March 1, 2013, he testified that he failed to appear the previous day because he was "scared" and that he had been told not to come to court by Defendant's "brother" and "a couple other friends." (N.T., 2/28/2013, pgs. 6, 7) The Commonwealth offered this testimony not for the truth of the matter but for "his state of mind, how he's feeling, what pressure is being placed on him not to be here today." (N.T., 2/28/2013, pg. 6)

This testimony was especially relevant in light of the evidence of the phone transcripts admitted the previous day which specifically mentioned Mr. Mok. On admitting these transcripts, the Court cautioned the jury: "Just a reminder, what you just heard is only coming from one defendant. It's only about the one defendant. You can really only use it with regard to the one defendant. Those are not the words of Kinika Oum, and it wasn't introduced as evidence against Kinika Oum. It's only evidence against Samneang Sin."

## III.   COUNSEL FOR THE COMMONWEALTH'S COMMENT DID NOT WARRANT A MISTRIAL.

Defendant in his fifth complaint states, "The prosecutor committed prosecutorial misconduct that warranted a mistrial when during closing argument he impermissibly commented on Defendant's burden of proof and right to remain silent." Defendant's complaint is without merit.

16

A defendant's Motion for a Mistrial is provided for in Pennsylvania Rules of Criminal Procedure (Pa.R.Crim.P.) at Rule 605 (B) which provides: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." "Every unwise or irrelevant remark made in the course of the trial by a judge, a witness, or counsel, does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973).

The Superior Court of Pennsylvania has discussed the issues to be considered in the granting of a mistrial. In *Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa. Super. 2008), citing *Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa. Super. 2003) our Superior Court held that "A motion for a mistrial is within the discretion of the trial court. [A] mistrial [upon motion by one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion. An abuse of discretion is more than an error of judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or

17

ill-will." *Hudson* concluded the "inquiry into whether prejudice has accrued is necessarily a fact specific one." *Id.*, at 1034.

Our Superior Court, in *Commonwealth v. Bracey*, 831 A.2d 678, 682 (Pa. Super. 2003), citing *Commonwealth v. Stilley*, 455 Pa. Super. 543, 689 A.2d 242, 250 (Pa. Super. 1997), held that "A mistrial is an 'extreme remedy . . . [that] . . . must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.' A trial court may remove taint caused by improper testimony through curative instructions. Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate." (Citations omitted.)

"Because a criminal trial is an adversary proceeding, the prosecution as well as the defense must be allowed reasonable latitude in presenting its case to the jury." *Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. Super. 2001) A prosecutor is generally allowed to vigorously present and argue his case, as long as the comments are supported by evidence and contain inferences which are reasonably derived from that evidence. It is well-settled law that attorneys' statements or questions at trial are not evidence. The focus of this Court's consideration of claims regarding prosecutorial misconduct is to determine whether the defendant was deprived of a fair trial and not whether the defendant was deprived of a perfect trial." *Commonwealth v. Kemp*, 753 A.2d 1278, 1282 (Pa. 2000) Our Supreme Court later explained that "prosecutorial

18

misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." *Commonwealth v. Cuevas*, 832 A.2d 388, 394 (Pa. 2003) Furthermore, the "Commonwealth may 'fairly respond' to closing remarks made by the defense." *Commonwealth v. Brown*, 449 Pa. Super. 346, 357-58, 673 A.2d 975, 981 (Pa. Super. 1996) Additionally, "comments by a prosecutor, which would otherwise be in error, have been held not to be erroneous if made in response to a defense argument." *Brown, Id.*, 673 A.2d at 981, citing *Commonwealth v. Fielder*, 417 Pa. Super. 455, 612 A.2d 1028 (Pa. Super. 1992)

Defendant in his complaint mischaracterizes counsel for the Commonwealth's closing argument. During his closing argument counsel for Defendant stated: "Four witnesses, half of that is two. They called two. They called Nasir and Quenzel." (N.T., 3/1/2013, pg. 86) In response to this comment, in his closing argument, counsel for the Commonwealth stated:

> "Ladies and gentlemen, I want to just briefly address a couple things that the defense attorney said to you about the witnesses, that I only called -- told you half the story.......You know, it's so funny and it's so disingenuous for the defense attorney to get up here and say that, that I gave you half the story as if somehow he's handcuffed. Folks, the burden of proof is on me. It never shifts. It's my burden to prove my case. But you know what, folks, it is -- it's fairness. It's all about fairness. If I don't call witnesses, there's nothing preventing the defense attorney from subpoenaing people into the courtroom. If he thinks I'm not telling the whole story or I'm not giving you the whole truth or I'm misrepresenting something or hiding something, he can call witnesses. He could have called them. He could have called them." (N.T., 3/1/2013, pgs. 117, 118)

19

At this juncture counsel for Defendant objected. In response, the Court instructed the jury:

> "**THE COURT**: You should understand that what the DA is saying and that the law says, is that the defense never has to call any witnesses, never has to produce any evidence. (N.T., 3/1/2013, pg. 118)

Counsel for Defendant did not object further to the Court's instruction.

It is clear that in his closing counsel for the Commonwealth never intended for the jury to believe that the burden of proof had somehow shifted to Defendant. In prefacing his remarks he made it clear that "the burden of proof is on me. It never shifts. It's my burden to prove my case." The Court's curative instruction to the jury was more than sufficient to address any taint which may have been occasioned by counsel's remarks.

## IV.    DEFENDANT'S SENTENCE WAS NOT PROPER.

Although Defendant, in his statement of errors, did not complain the Court erred in sentencing appellant for two inchoate crimes, i.e. attempted murder and conspiracy to commit attempted murder, it may be raised sua sponte. Although this issue may be deemed waived because Defendant did not object, the Court recognizes that a complaint addressing the legality of a sentence may be raised at any time. *Commonwealth v. Ford*, 315 Pa. Super. 281, 461 A.2d 1281 (Pa. Super. 1983) 18 Pa.C.S.A. § 905 provides in part: "Grading of criminal attempt, solicitation and conspiracy (a) GRADING.-- Except as otherwise provided in this title, attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy." Furthermore, 18 Pa.C.S.A. § 906 provides: "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal

solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime."

At the conclusion of his trial, Defendant was found guilty of both attempted murder and conspiracy to commit murder all arising from the single act of the shooting of Mr. Members which resulted in serious bodily injury. 18 Pa.C.S.A. § 1102 provides in part: "(c) Attempt, solicitation and conspiracy.--Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years." Defendant was subsequently sentenced to incarceration in a state correctional institution for a period of 3 to 8 years on the charge of attempted murder as well as a consecutive term of confinement of 2 to 5 years on the charge of conspiracy to commit murder, for a total combined period of incarceration of 5 to 13 years on these two charges, well within the maximum allowable on either one of these charges. In view of these circumstances, the Court recommends that this matter be remanded only for the purpose of resentencing Defendant.

## CONCLUSION

The Court finds that its evidentiary rulings are supported on the record. The Court also finds that Defendant's sentencing on two inchoate offenses is improper and recommends that this matter be remanded for re-sentencing.

BY THE COURT:

February 7, 2014

_____ J.
HON. CHARLES J. CUNNINGHAM, III

22