J-S01020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
       :             PENNSYLVANIA
       :
    v.                      :
       :
       :
DOMINIC J. FLEMISTER         :
       :
      Appellant      :    No. 946 MDA 2021

Appeal from the PCRA Order Entered June 17, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002037-2015

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:          **FILED: AUGUST 25, 2022**

Dominic J. Flemister (Appellant) appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  Appellant contends that his trial counsel was ineffective.  After review, although we affirm the order denying Appellant's PCRA petition, we are constrained to vacate Appellant's judgment of sentence in part.

On direct appeal, a prior panel of this Court summarized the relevant facts of this matter as follows:

> In late April 2014, James Hill, a friend of Appellant, known by the nickname "Kool Aid" or "Laid", saw Appellant arguing with another person at an after-hours club on 19th Street in Harrisburg.  On the same evening, after witnessing the argument at the club, Hill next saw Appellant get out of his black Chrysler in the area of 17th

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

and Swatara Streets and continue the argument with the same person.  As Hill was walking on 17th Street, he heard two shots.  Hill looked in the direction of the shots and saw Appellant get into his car and pull off.  Hill walked several blocks to his cousin's house where he sat on the porch.  About 10-20 minutes later, Appellant called out to Hill.  The two spoke in an alleyway on Swatara Street.  Appellant told Hill that the "other guy", [Dunbar], had tried to take a swing at him and that Appellant "had to do something to him" or "something had to be done to him".  As they spoke in the alleyway, Hill observed that Appellant had a gun.  Hill did not contact police because Hill was friends with Appellant and did not want to "rat him out."  Hill spoke to police after they contacted him through his girlfriend.

On April 25, 2014, at 3:43 a.m., while on patrol in the area of 17th and Derry Streets in a marked police vehicle, Harrisburg Police Officer Angel Diaz heard a woman screaming.  Officer Diaz activated the emergency equipment on the police vehicle and pulled toward South 17th and Swatara Streets where he saw the woman in the street.  Officer Diaz saw a person, later identified as Rodney Dunbar, lying on his back on the porch at 411 South 17th Street bleeding profusely from the groin.  Officer Diaz spoke to Mr. Dunbar to keep him awake until emergency personnel arrived.  Officer Diaz accompanied Mr. Dunbar in the ambulance *en route* to the Hershey Medical Center.  During the ambulance ride, Dunbar stated, "they tried to kill me."

Brianna Chambers, Rodney Dunbar's girlfriend, lived with him at the 400 Block of 17th Street.  On the night of the incident, while she was on the porch, she observed Appellant and another person approach Dunbar.  Approximately ten feet from the porch, a fight broke out between Dunbar and Appellant.  Ms. Chambers heard the sound of a gunshot from the location of the fighting.  Ms. Chambers observed neighbors in the area at the time although they were apart from the fight and did not participate.  Upon realizing that Dunbar had been shot, Ms. Chambers began screaming and called 911.

From the scene, police collected a shell casing from a revolver.  Pennsylvania State Police records reflect that on April 25, 2014, Appellant did not possess a valid license to carry a firearm.

Rodney Dunbar sustained a gunshot wound to the left thigh which caused obliteration of multiple femoral vessels for which he

underwent multiple surgeries for artery repair as well as blood transfusions.

On the morning after the shooting, on April 25, 2014, Harrisburg Police Detective Ryan Neal met with Brianna Chambers. From a photo array, Ms. Chambers identified Appellant as the person who fought with and shot Rodney Dunbar. In a second photo array, Ms. Chambers identified an individual named Najee Banks as the person who accompanied Appellant. Ms. Chambers did not identify Najee Banks as a person who fought with Appellant.

Because Mr. Dunbar had undergone surgery, Detective Neal had only brief contact with him in the initial days following the shooting. In one of those early visits, on April 26, 2014, in response to a question as to whether he recognized anyone in the photo array, Dunbar circled Appellant's picture. Detective Neal noted on the picture "Unable to sign due to the circumstances." In a subsequent visit, Detective Neal again showed Dunbar a photo array. Dunbar circled a picture of Appellant and stated, "That's the boy that shot me." When Detective Neal asked Dunbar "who is that guy that is circled?" Dunbar responded, "Kool Aid." Dunbar signed and noted the date and time on the photo array. Detective Neal asked, "Now as far as this Kool Aid guy, how certain are you that this is the person that shot you?" to which Dunbar responded "Yeah, I'm 100 for sure."

At trial, in response to questioning by the prosecutor, Rodney Dunbar acknowledged only that he recalled being shot on the night in question, that he had to undergo multiple surgeries, and that he remained hospitalized for approximately one month. After proper foundation, the court permitted the prosecutor to treat Mr. Dunbar as a hostile witness. After Dunbar's refusal to answer questions at trial, the court directed that he cooperate by reading the transcribed recorded statement he gave Detective Neal, or, in the alternative, allow the prosecutor to read the transcript into evidence. Dunbar reluctantly cooperated with the reading. In the transcribed recorded statement, Dunbar stated,

> We were all at the crib playing cards and music. So I left 2:00 (sic) to go to Forever Nights. So I seen him, seen Kool Aid at Forever Nights. We had some words. So after that I left. Walking to, walking to back to my house. So I seen Kool Aid come out, hop out, hop out of this black, black car. He came up to me talkin' about, oh yeah you wanna act tough now? You wanna act tough. . . ? I was, like, what's

up, and that's when we start. We start tearin' it. And then after that everything was done. He felt some type of way. He shot at me. And that's when I ran to the porch and laid down. And that's when my baby mom called the cops, called the ambulance.

In the statement, Dunbar told Detective Neal that Appellant pulled the gun from his pocket. Appellant shot Dunbar from a distance of 15-20 feet.

Around mid-day on April 28, 2014, Harrisburg Police and FBI Task Force Officer Richard Gibney received a phone call from Appellant's cousin, William Flemister. Officer Gibney had dealt with William in the past and knew of Appellant. William Flemister related that he saw on the internet that Harrisburg Police wanted Appellant. William Flemister stated that he would have Appellant call Officer Gibney.

Appellant called Officer Gibney at approximately 3:15 p.m. that day. Appellant stated that he did not shoot anyone. Officer Gibney urged Appellant to meet with him and lead detective Ryan Neal. In the phone conversation, Appellant told Officer Gibney of his whereabouts on the night of the incident, up to the point of his going to a pizza shop at 17th and Derry Streets at 1:45 a.m. Appellant gave no information about his whereabouts after 1:45 a.m. Appellant told Officer Gibney that he knew Rodney Dunbar and that they had an altercation a few weeks before because he heard that Dunbar was spreading rumors about him. Appellant made no further contact with Officer Gibney. Officers apprehended Appellant on May 20, 2014.

*Commonwealth v. Flemister*, 1951 MDA 2015, 2016 WL 5920672, *1-*3, (Pa. Super. filed Sept. 8, 2016) (unpublished mem.) (footnote omitted and some formatting altered), *appeal denied*, 168 A.3d 1285 (Pa. 2017).

Following a jury trial, Appellant was found guilty of criminal attempt (first-degree murder), aggravated assault, and firearms not to be carried

- 4 -

without a license.[2]  PCRA Ct. Op., 5/25/21 at 5-6.  On September 17, 2015, the trial court sentenced Appellant to concurrent terms of twenty to forty years' incarceration for attempted murder, nine to eighteen years' incarceration for aggravated assault, and three to seven years' incarceration for the firearms offense.  *Id.* at 6.

Appellant filed a post-sentence motion that was denied on October 7, 2015.  On November 4, 2015, Appellant filed a timely appeal.  On September 8, 2016, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied allowance of appeal.  *See Flemister*, 2016 WL 5920672, *appeal denied*, 168 A.3d 1285 (Pa. 2017).  On August 9, 2017, Appellant filed a timely *pro se* PCRA petition.  Following numerous appointments and changes of counsel, extensions of time, and amended PCRA petitions, the PCRA court held an evidentiary hearing on April 5, 2021.  On May 25, 2021, the PCRA court filed a memorandum and notice of intent to dismiss.

On June 17, 2021, the PCRA court denied Appellant's PCRA petition, and Appellant filed a timely notice of appeal.  On July 20, 2021, Appellant's PCRA counsel (Prior PCRA Counsel) was permitted to withdraw, and the PCRA court appointed present counsel, Kristen Weisenberger, Esq., as Appellant's appellate counsel (Present Counsel).  On July 30, 2021, the PCRA court directed Appellant to file a concise statement of errors complained of on appeal

---

[2] 18 Pa.C.S. §§ 901(a), 2502(a); 2702(a)(1); and 6106(a)(1), respectively.

pursuant to Pa.R.A.P. 1925(b). Present Counsel filed a timely Rule 1925(b) statement on August 6, 2021, and on August 12, 2021, the PCRA court filed a Rule 1925(a) statement adopting its May 25, 2021 memorandum.

On appeal, Appellant raises three issues, which we have reordered, as follows :

> 1. Whether the PCRA court erred in denying Appellant's PCRA petition where Appellant presented sufficient evidence of trial counsel's ineffectiveness in failing to impeach Commonwealth witnesses Chambers and Dunbar on their prior *crimen falsi* convictions.
>
> 2. Whether the [PCRA] court erred in denying Appellant's PCRA petition where Appellant presented sufficient evidence of trial counsel's ineffectiveness in failing to object [to] the Commonwealth's failure to prove an element of the crime.
>
> 3. Whether the [PCRA] court erred in denying Appellant's PCRA petition where Appellant presented sufficient evidence of trial counsel's ineffectiveness in failing to impeach Commonwealth witness Hill regarding favorable treatment he received from the Commonwealth.

Appellant's Brief at 4 (formatting altered).

This Court has explained that our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions. **Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted). Each of Appellant's issues presents a claim of ineffective assistance of trial counsel.

- 6 -

The standard we apply when reviewing claims of ineffective assistance of counsel is as follows:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> *        *        *
>
> Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Id.* at 1043-44 (citations omitted and formatting altered). Further, it is well settled that counsel cannot be found ineffective for failing to raise a meritless claim. *Commonwealth v. Epps*, 240 A.3d 640, 645 (Pa. Super. 2020).

Appellant first contends that trial counsel was ineffective in failing to impeach Commonwealth witnesses Dunbar and Chambers with evidence of their prior *crimen falsi* convictions. Appellant's Brief at 14-16.

We note that evidence of a witness's conviction for *crimen falsi*, a crime involving dishonesty or a false statement, is generally admissible. *See Commonwealth v. Hoover*, 107 A.3d 723, 730 (Pa. 2014) (citing Pa.R.E. 609). "A failure to so impeach a key witness is considered ineffectiveness in

the absence of a reasonable strategic basis for not impeaching." ***Commonwealth v. Treiber***, 121 A.3d 435, 456 (Pa. 2015) (citation omitted).

The PCRA court addressed this issue as follows:

Trial counsel made a reasonable strategic decision to refrain from challenging Dunbar's credibility in that Dunbar testified at trial that he did not know who shot him. Dunbar claimed he could not identify [Appellant] as the shooter, testimony potentially damaging to the Commonwealth's case. Therefore, [Appellant] would not benefit from undermining Dunbar's credibility where the jury might have accepted his trial testimony over the statement to police. Similarly, no ineffectiveness occurred related to trial counsel's refraining from challenging Chambers' credibility with evidence of Chambers' acceptance of ARD on charges of forgery and receiving stolen property. The trial court would have properly excluded such evidence as admission into an ARD program is not a conviction that may be used for purposes of impeachment. ***Commonwealth v. Brown***, 673 A.2d 975 (Pa. Super. 1996).

For the same reasons, trial counsel properly refrained from seeking a jury instruction as to *crimen falsi*.

PCRA Ct. Op., 5/25/21, at 13.

We agree with the PCRA court's conclusion. At the PCRA hearing, Appellant's trial counsel testified that the basis of Appellant's defense strategy was on Dunbar's inability to identify Appellant as the shooter. N.T., 4/5/21, at 25. As such, we agree with the PCRA court that it was reasonable for Appellant's trial counsel to refrain from attacking Dunbar's credibility. Moreover, with respect to Chambers, the PCRA court correctly points out that his admission in the ARD program on the charges of forgery and receiving stolen property is not a conviction and may not be used to impeach a witness.

*See Brown*, 673 A.2d at 979. Accordingly, there is no merit to the argument that trial counsel should have impeached Chambers' testimony with his ARD program admission, and counsel cannot be found ineffective for failing to raise a meritless claim. *See Epps*, 240 A.3d at 645.[3] Next, Appellant asserts that trial counsel was ineffective for failing to object to the Commonwealth's inability to prove an element of the crime of attempted murder. Specifically, Appellant contends that the Commonwealth failed to prove the specific intent to kill, and trial counsel did not object. Appellant's Brief at 24-25. Upon review, we conclude that no relief is due.

On direct appeal, Appellant specifically challenged the sufficiency of the evidence proving the specific intent to kill. *See Flemister*, 2016 WL 5920672, at *3. A prior panel of this Court addressed this claim as follows:

The Crimes Code provides:

**(a) Definition of attempt**.—A person commits an attempt when, with intent to commit a specific crime, he does any

---

[3] In the argument portion of his brief, Appellant addresses additional issues concerning alleged after-discovered evidence. Appellant's Brief at 18. Appellant concedes that he failed to raise these claims in his Rule 1925(b) statement but asserts that the PCRA court mentioned the issues in its opinion. *Id.* We conclude that these ancillary issues are waived. It is well settled that issues that are not included in a court-ordered Rule 1925(b) statement are waived. *See Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005); Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"). The fact that the PCRA court mentioned Appellant's alleged after-discovered evidence claim does not preserve it for appellate review. *See, e.g., Commonwealth v. Heggins*, 809 A.2d 908, 911 (Pa. Super. 2002) (stating that even in cases where the trial court correctly guesses the issue and writes an opinion pursuant to that supposition, the issue remains waived (citation omitted)).

act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S. § 901. "A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." **Commonwealth v. Jackson**, 955 A.2d 441, 444 (Pa. Super. 2008) (internal citations and quotations omitted). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." **Id.** "Attempted murder requires an intent to bring about that result described by the crime of murder (*i.e.*, the death of another)." **Commonwealth v. Geathers**, 847 A.2d 730, 734 (Pa. Super. 2004). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely by circumstantial evidence." **Jackson**, 995 A.2d at 444. "The law permits the fact finder to infer that one intends the natural and probable consequences of his acts." **Id.** "The offense of attempt to kill is completed by the discharging of a firearm at a person with the intent to kill, despite the fortuitous circumstances that no injury is suffered." **Commonwealth v. Mapp**, 335 A.2d 779, 781 (Pa. Super. 1975) (necessary intent found for attempted murder where defendant shot at victim and missed). Additionally, our Supreme Court has repeatedly determined that "the use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill" required for a first-degree murder conviction. **See Commonwealth v. Rega**, 933 A.2d 997, 1009 (Pa. 2007); **Commonwealth v. Cousar**, 928 A.2d 1025, 1034 (Pa. 2007) ("a specific intent to kill may be inferred from the use of a deadly weapon on a vital part of a victim's body.").

**Id.** at *4 (some formatting altered). This Court concluded: "we do not hesitate to find that there was sufficient evidence to enable the fact-finder to find every element of attempted murder beyond a reasonable doubt." **Id.**

However, our Supreme Court has held that "ineffectiveness claims are distinct from those claims that are raised on direct appeal." **Commonwealth v. Collins**, 888 A.2d 564, 573 (Pa. 2005). Nevertheless, the **Collins** Court

- 10 -

further explained that "although we will analyze a distinct claim of ineffectiveness that is based on the underlying issue that was litigated on direct appeal, in many cases, those claims will fail for the same reasons as they failed on direct appeal." ***Id.*** at 574-75.

As stated, on direct appeal, this Court concluded that the Commonwealth proved Appellant had the specific intent to kill. ***See Flemister***, 2016 WL 5920672, at *4. Accordingly, there is no merit to Appellant's assertion, and it is well settled that counsel cannot be deemed ineffective for failing to raise a meritless claim. ***See Collins,*** 888 A.2d at 574-75; ***see also Epps***, 240 A.3d at 645. Appellant is due no relief.

In his third issue, Appellant contends that trial counsel was ineffective in failing to impeach Commonwealth witness Hill regarding favorable treatment he allegedly received from the Commonwealth. The PCRA court addressed this claim as follows:

> No ineffectiveness occurred related to [Appellant's] claim that Hill was motivated to provide testimony helpful to the Commonwealth. The prosecution and defense counsel thoroughly questioned Hill as to whether he had, or he expected to receive, favorable treatment. Hill testified as follows:
>
> > BY MR. SPROW (For the Commonwealth): You're currently in state prison; we can see from your outfit?
> >
> > WITNESS [(Hill)]: Right.
> >
> > MR. SPROW: And you have some charges pending in Dauphin County right now; is that right?
> >
> > WITNESS: Right.
> >
> > MR. SPROW: Drug related? Drugs?

WITNESS: Uh-huh.

MR. SPROW: There are no promises, though, that have been made to you in connection with why you're in prison or those charges and your testimony here; correct?

WITNESS: No.

MR. SPROW: But you're hoping you might get some benefit from it; is that fair?

WITNESS: No.

MR. SPROW: Okay. You understand you're under oath and you need to tell the truth.

WITNESS: Right.

N.T., 12/4/15, at 70-71.

On cross-examination, [Appellant's] counsel thoroughly questioned Hill about the believability of that testimony and his motivation to come forward as a witness. Hill testified as follows:

BY MS. BATZ ([Appellant's] COUNSEL): Okay. Did you call the police that night?

WITNESS: No.

MS. BATZ: Did you offer yourself up as a witness to the police at any point?

WITNESS: No.

MS. BATZ: In fact, you only contacted the police, what, this April? This past April?

WITNESS: I didn't contact nobody.

MS. BATZ: You didn't contact anyone-

WITNESS: No.

MS. BATZ: Okay. Did you give them a written statement?

WITNESS: Yes.

MS. BATZ: Okay. Now, at the time you gave them a written statement, had you been arrested for the current charges that are pending against you?

WITNESS: What you mean?

MS. BATZ: Well, you were recently charged with some unrelated crimes to this in what? March of 2015? March of this year?

WITNESS: No, I was charged with that in November.

MS. BATZ: You were charged with that in November?

WITNESS: Yeah.

MS. BATZ: Of last year?

WITNESS: Right[.]

MS. BATZ: Okay. You have two pending dockets against you?

WITNESS: One.

MS. BATZ: Just one. Okay. Are you James Lamar Hill?

WITNESS: Yes.

MS. BATZ: But only after you were charged, did you then come to the police with this story; correct?

WITNESS: No.

MS. BATZ: So, did they come to you?

WITNESS: Sort of.

MS. BATZ: What do you mean "sort of"? Did you or did you not reach out to the police and tell them you had information about a shooting?

WITNESS: Yes.

MS. BATZ: Okay. And that was in the hopes of maybe getting a better deal for yourself for these pending charges?

WITNESS: Kind of[.]

MS. BATZ: Kind of, or it was?

WITNESS: Kind of.

MS. BATZ: Kind of. Ok.

> WITNESS: Yes.
>
> MS. BATZ: So, what's the alternative?  Do you just feel like suddenly being truthful and honest?
>
> WITNESS: Yes.
>
> MS. BATZ: In the hopes of helping someone out?
>
> WITNESS: Yes.
>
> MS. BATZ: Yourself though.  You want to help yourself out?
>
> WITNESS: Kind of.

N.T., 12/4/15, at 79-81.

> [Appellant's] counsel's effective cross-examination revealed that Hill hoped he would receive favorable treatment by testifying.  The jury was free to reject Hill's testimony as non-credible or accept his testimony as true, in spite of his admitted motivation.

PCRA Ct. Op., 5/25/21, at 13-16 (formatting altered).

We agree with the PCRA court.  Appellant's trial counsel thoroughly cross-examined Hill concerning his motivation for testifying, and it was the jury's duty to weigh that testimony.  Accordingly, we discern no arguable merit to this claim of ineffective assistance of counsel, and Appellant is due no relief. *See Sandusky*, 203 A.3d at 1043-44.

We note that Appellant expands on his third issue in his appellate brief and makes the following allegation:

> Appellant alleges that after . . . Hill testified, the charges pending against him were dismissed.  The docket, CP-22-CR-3082-2015, appears to have been expunged and cannot be verified but for an evidentiary hearing to determine whether . . . Hill's charges were dismissed and for what reason.  This matter was not litigated at Appellant's PCRA hearing.  A failure to turn over favorable treatment of a Commonwealth witness is a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and warrants a new trial.  If the Commonwealth dismissed . . . Hill's charges as a result of his

- 14 -

testimony, the Commonwealth violated **Brady**, and the appellant deserves a new trial.

Appellant's Brief at 23-24. As such, for the first time on appeal, Appellant asserts that Prior PCRA Counsel was ineffective for failing to raise before the PCRA court the alleged dismissal of charges and expungement of the record in exchange for Hill's testimony. **See id.** at 23.

Although Appellant has raised these claims for the first time on appeal, our Supreme Court recently decided **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), which held that a PCRA petitioner may, after a PCRA court denies relief and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even on appeal. **See Bradley**, 261 A.3d at 405. Because Appellant's appeal was pending when our Supreme Court decided **Bradley**, it is applicable to this appeal. **See Commonwealth v. Chesney**, 196 A.3d 253, 257 (Pa. Super. 2018) (stating that "Pennsylvania appellate courts apply the law in effect at the time of the appellate decision" (citations omitted)).

Nevertheless, despite the application of **Bradley**, Appellant's contention merely presents the bald accusation that the Commonwealth dismissed charges against a witness who testified against Appellant at trial. Appellant's Brief at 24. Appellant continues that if the witness received such favorable treatment from the Commonwealth for trial testimony, a new trial is warranted. **Id.** However, Appellant fails to support this equivocal assertion with anything beyond mere speculation and has not developed this claim to

the point where it is necessary to remand the matter to the PCRA court for further consideration. *Cf. Bradley*, 261 A.3d at 402 (explaining that "to advance a request for remand [for further development of the record, an appellant] would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness" (citation and quotation marks omitted)). Accordingly, we conclude that Appellant is due no relief.

Although we conclude that there is no merit to Appellant's issues challenging the PCRA court's order, and further, that we agree with the PCRA court that Appellant is not entitled to relief on his claims of ineffective assistance of counsel, these conclusions do not end our review. Previously, this Court filed a memorandum on May 16, 2022, remanding this matter to the PCRA court with instructions to address whether Appellant's convictions for attempted murder and aggravated assault should have merged for sentencing purposes.[4] The PCRA complied and filed a supplemental opinion

_____

[4] Questions concerning merger implicate the legality of a sentence, and this Court may address the issue *sua sponte*. *See Commonwealth v. Watson*, 228 A.3d 928, 941 (Pa. Super. 2020). Our Legislature had addressed merger for purposes of sentencing as follows:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. When reviewing an issue of merger and the legality of a sentence, our standard of review is *de novo*, and our scope of review is plenary. *Watson*, 228 A.3d at 941.

on June 1, 2022.[5] In its supplemental opinion, the PCRA court recognized that Appellant's convictions for attempted murder and aggravated assault arose from a single criminal act, and therefore, these convictions should have merged for purposes of sentencing. *See* Suppl. PCRA Ct. Op., 6/1/22, at 5 (citing ***Commonwealth v. Anderson***, 650 A.2d 20, 24 (Pa. 1994) (holding that when offenses are predicated on a single criminal act, aggravated assault is a lesser included offense of attempted murder, and these crimes merge for purposes of sentencing)).

Upon review, we agree. Because Appellant's convictions for attempted murder and aggravated assault arose from Appellant's single criminal act of shooting Dunbar, these convictions should have merged for sentencing purposes. ***See Anderson***, 650 A.2d at 24. Therefore, although we do not disturb Appellant's conviction for aggravated assault, we vacate the sentence imposed on the crime of aggravated assault. ***See Commonwealth v. Tucker***, 143 A.3d 955, 958 (Pa. Super. 2016) (affirming the conviction but holding that the illegal sentence must be vacated). However, we conclude that we need not remand for resentencing because our decision does not upset the trial court's sentencing scheme, which consisted of entirely concurrent sentences. ***See Commonwealth v. Thur***, 906 A.2d 552, 570 (Pa. Super.

---

[5] In our prior memorandum, we afforded Appellant twenty-one days from the date the PCRA court filed its supplemental opinion in which to file a supplemental brief. Appellant's supplemental brief was therefore due on July 8, 2022. As of this writing, Appellant has not filed a supplemental brief.

2006) (holding that where the appellate court can vacate an illegal sentence without upsetting the trial court's overall sentencing scheme, it need not remand for resentencing); *see also Commonwealth v. Klein*, 795 A.2d 424, 430-31 (Pa. Super. 2002) (stating that "where a case requires a correction of sentence, this [C]ourt has the option of either remanding for resentencing or amending the sentence directly" (citation omitted)).

For these reasons, Appellant is due no relief on his claims concerning ineffective assistance of counsel, and we affirm the order denying PCRA relief. Further, although we do not upset Appellant's conviction for aggravated assault, we vacate Appellant's sentence for the crime of aggravated assault because it merged with attempted murder for sentencing purposes. The sentences for attempted murder and firearms not to be carried without a license remain undisturbed.

Order affirmed. Judgment of sentence vacated as to aggravated assault. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2022